## FOLEY & WHITEHILL v. TEXAS CO.
### (No. 2754.)

(Court of Civil Appeals of Texas. Texarkana. May 21, 1923. Rehearing Denied May 24, 1923.)

I. **Frauds, statute of ⬡⟿106(1) — Written memorandum must express all essential terms of contract with such certainty as to render recourse to parol evidence unnecessary.**

To satisfy Rev. St. art. 3965, the required written memorandum of a contract not to be performed within a year is not the contract, but only the evidence thereof, and must contain all its essential terms, expressed with such certainty that it may be understood without recourse to parol evidence to show the parties' intention.

2. **Frauds, statute of ⬡⟿113(3)—Letter promising employment at drilling oil wells held insufficient memorandum of oral agreement to give employment for two years.**

A letter promising employment at drilling oil wells to the extent of four strings of tools, if shipped within 12 days, received promptly on the location, and kept working "for us" until "eight wells altogether" were completed, *held* an insufficient memorandum of an alleged oral agreement to give employment for "at least two years"; the time of employment and the price payable, which were material terms, being omitted.

3. **Frauds, statute of ⬡⟿144—Company paying for all work done under contract held not estopped to rely on statute in action for failure to continue employment for period orally agreed on.**

A company, paying oil drillers for all the work performed under a contract with it, *held* not estopped from asserting the statute of frauds in the drillers' action for damages for its failure to continue their employment for "at least two years," as orally agreed, because of their purchase of tools and loss of future labor and profits, especially as the action was not founded on fraudulent promises.

4. **Master and servant ⬡⟿8(1)—Letter promising employment at drilling oil wells held agreement for indefinite hiring.**

A letter promising employment at drilling oil wells to the extent of four strings of tools, if shipped within 12 days, received promptly on the location, and kept working exclusively for promisor until "eight wells altogether" were completed, *held* an agreement for an indefinite hiring, except as to the number of wells drilled, and hence terminable at will, after completion thereof, without incurring liability for damages for loss of future work and profits, on the theory that a prior oral contract of employment for two years and oral negotiations therefor were merged into the letter as a written contract.

5. **Frauds, statute of ⬡⟿128—Promise to reimburse oil drillers for freight charges paid on tools held enforceable.**

A promise to reimburse oil drillers for freight charges paid on tools, if shipped within 12 days, received promptly on the location and kept working for promisor exclusively until eight wells were completed *held* enforceable after termination of promisees' employment, notwithstanding the insufficiency of a letter containing it as a memorandum of a prior oral agreement to employ them for at least two years.

Appeal from District Court, Tarrant County; Ben M. Terrell, Judge.

Suit by Foley & Whitehill against the Texas Company. Judgment for defendant, and plaintiffs appeal. Reversed and remanded.

The suit was brought by appellants to recover against appellee (1) damages; and for (2) repayment of certain freight charges paid in the shipment of certain oil tools, arising

on a contract between the parties. The court sustained a general demurrer to the petition.

The petition in effect alleges that J. C. McCue and H. M. Anderson, duly authorized agents acting in behalf of the Texas Company, about August 1, 1919, orally made the proposition to T. H. Foley, acting for Foley & Whitehill, and which oral proposition, "as made by said McCue and said Anderson on behalf of defendant was finally accepted by said Foley on behalf of plaintiffs," viz.:

"Defendant would employ [the plaintiffs] with strings of tools for drilling oil wells in its oil field in North Texas; that defendant would guarantee payment to supply companies for said string of tools, and advance the necessary cash for running expenses; that defendant would pay the plaintiffs the usual and customary prices in the said field for drilling oil wells, and would guarantee plaintiffs from two to three years' actual work in drilling with four strings of tools, and, no difference how slack work got, the defendant would guarantee and agree to keep said tools working for said period of time, and did guarantee to give said Foley, for plaintiffs, eight wells to drill under one camp, and would pay them $4 per foot for drilling said wells, and $75 per day shut-down time when they were not at work, and would repay them the freight charges for shipping said four strings of tools to said field when the eighth well was completed."

The allegations then proceed as follows:

"And as a written memorandum of said verbal agreement between plaintiffs and defendant, the defendant, acting through said Anderson, its duly authorized agent, and upon its stationery, furnished and delivered to said Foley the following letter:

"The Texas Company, Petroleum and Its Products, Cisco, Texas, August 4, 1919. Subject: Contracts and Drilling. Mr. T. H. Foley, Building—Dear Sir: As I understand it, you are contemplating shipping four strings of tools into Eastland county. We will agree to give you work for these four strings in the vicinity of our Littleton, Boyd, and Turner leases, which are located between 4½ and 5 miles northeast of the town of Eastland. In the event you ship these four strings of tools within 12 days from this date and they arrive promptly on the location, and that you complete two wells with each string of tools, or eight wells altogether, in a satisfactory manner, we will reimburse you for the amount of freight paid on the four strings, providing also that you keep these tools working for us. Yours truly, The Texas Company, Producing Department, by H. M. Anderson.'"

It is then alleged:

"That said tools were shipped and located, and said plaintiff begun the work of drilling said wells on or about October 28, 1919. That they completed seven wells and drilled the eighth well to a depth of about 940 feet, when the plaintiff Foley received an order from the office of said Anderson on or about August 12, 1920, to shut down said eighth well. That said wells were drilled in a satisfactory manner, and

no complaint as to the work rendered by plaintiffs was made by defendants or any of its agents. In fact, the first six of said wells were each drilled in a period of about 64 days. That plaintiff Foley rendered defendant's said agent, Anderson, a bill for the amount due on said eighth well for the drilling actually done, which bill was eventually paid. That defendant paid plaintiffs for drilling said other seven wells as the same were completed."

Further it was alleged:

"That after the eighth well was shut down said Foley repeatedly demanded from defendant and its agent that they give him further drilling work to do, and was repeatedly assured by defendant and its only authorized agents, Anderson and McCue, that they would continue to give him drilling work to do as per said agreement; but that defendant and its duly authorized agents finally and positively refused to carry out the terms of said agreement and to give plaintiffs any additional drilling work to do or to pay any part of said freight charges, and defendant and its agents still refuse to carry out said agreement, although plaintiffs have frequently made demand that same be carried out."

As alleged:

"The plaintiffs paid the freight charges for the shipment of said tools, amounting to about $1,709.30."

It is claimed in the petition:

"That because of the failure and refusal of the defendant to repay said freight charges plaintiffs have been damaged in the amount of said charges in the sum of, to wit, $1,709.30, together with legal interest thereon, for which amount they sue. That because of the failure and refusal of defendant to carry out said contract with plaintiffs they have been damaged in the amount of the reasonable profits which they would have made out of said contract for the remainder of said term of two years (which were set out) together with the additional expenses (which were set out) and the amount of said freight charges hereinbefore set out, all being in the total sum of, to wit, $153,917.25, together with legal interest, for which they sue."

The plaintiffs further plead that the "defendant is estopped to undertake to claim that said contract and the validity thereof is in any way affected by the statute of frauds," because "the said agreement to employ plaintiffs for said period of from two to three years was fraudulently made, with the intent to deceive them and cause them to purchase and ship said tools aforesaid, with the real intention at that time on defendant's part to employ said plaintiffs for such time as it might see fit and thereafter discharge them." The above is a substantial statement of the allegations in the petition.

McCart, Curtis & McCart, of Fort Worth, for appellants.

H. S. Garrett, of Fort Worth, for appellee.

LEVY, J. (after stating the facts as above). [1] 1. The appellants in their brief and in their argument urge that the petition presents a cause of action founded on an oral contract, and not upon a written contract, of employment covering a period of "at least two years" after its date, and of which oral contract the alleged letter is a sufficient "memorandum thereof in writing" to charge the appellee within the statute of frauds in this state. In this view, then, the principal question is that of whether or not the alleged letter is a sufficient "memorandum in writing" of the previously made oral contract between the parties. The statute does not require the contract itself to be in writing, but "some memorandum thereof." Article 3965, R. S. As may be stated:

"The mischief meant to be prevented by the statute is leaving the terms of the contract to memory for a longer period than a year."

Consequently "the memorandum" is not the contract, but only the evidence of it. And such "memorandum," in order to satisfy the statute of frauds, as the rule is laid down in Browne on the Statute of Frauds, § 371:

"Must contain the essential terms of the contract expressed with such a degree of certainty that it may be understood without recourse to parol evidence to show the intention of the parties."

It seems well settled that "the memorandum," to be a legally sufficient "writing," must contain all the material substantive terms of the oral contract, so that it is not necessary to resort to oral testimony to supply one or more of such terms and to make it complete and definite. Johnson v. Granger, 51 Tex. 42; Fulton v. Robinson, 55 Tex. 401; Patton v. Rucker, 29 Tex. 402; 20 Cyc. 258; 28 C. J. p. 269, § 319; 1 Mechem on Sales, 360-367. See Wagniere v. Dunnell, 29 R. I. 580, 73 Atl. 309, 17 Ann. Cas. 205.

[2] Does the alleged letter obviate the necessity of going to oral testimony to show what the material and essential terms of the oral contract were? The letter on its face evidences and authorizes the construction, that the Texas Company promises or agrees: (1) To give to T. H. Foley & Co. actual "work" or employment drilling oil wells to the extent of "four strings" of oil drilling tools, the performance of the work to be on the specified leases located 4½ or 5 miles from the town of Eastland; and (2) to "reimburse" Foley & Co. "for the amount of the freight paid on the four strings," under the following four conditions, viz.: (a) that the four strings of tools are shipped within 12 days from August 4, 1919; (b) that such tools arrive promptly on the location to be drilled; (c) that Foley & Co. "in a satisfactory manner" drill and complete "eight wells altogether; and (d) that Foley & Co. "keep" or continue to have "these tools working" or at work during that period of time, "for us," meaning exclusively the Texas Company, and no other party. The letter does not state for how long a time, unless to drill "eight wells altogether." The Texas Company was to give "work" or employment to Foley & Co., and does not state the price payable for such work. The letter, then, as a "memorandum" of the alleged oral agreement, differs materially from the oral agreement as set out in the pleading.

It is the main issue of fact under the alleged oral agreement as to whether the employment was for a period of "at least two years," and actual employment for "at least two years" is a material and substantive term of such agreement. But the letter does not show on its face employment for "at least two years," or a definite time equivalent to that time. When it is apparent, as here, that a material term agreed on is omitted from the alleged "memorandum," such memorandum so relied on is legally insufficient to satisfy the statute of frauds. The alleged "memorandum" cannot be completed by oral evidence, for that would amount to construing the statute to require a portion, but not all, of the essential terms of the oral agreement to be shown by a "memorandum." It is the rule in this state that all, and not just a portion, of the essential elements of the oral contract must be contained in the memorandum, and that such omitted requisites cannot be supplied by parol proof. Zanderson v. Sullivan, 91 Tex. 499, 44 S. W. 484.

[3] The appellants further rely, as is claimed, upon certain pleaded estoppel to assert the statute of frauds. The petition affirmatively alleges that the appellee has paid the appellants for all the work that has been performed under the contract. Consequently the appellee is not in the attitude of receiving a benefit from part performance of a contract within the statute of frauds and for which it refused to pay, after refusing to carry out the agreement. The theory is untenable that the purchase of the oil tools, as well as the loss of future labor and profits after the refusal to carry out the agreement, was such loss and damage that the appellee induced appellants to incur in virtue of the oral promise or agreement as to make inequitable the application of the statute of frauds. Besides, the action is not founded on fraudulent promises.

[4] Moreover, assuming that it should be said that the petition, properly construing it, did not in legal effect found the cause of action entirely on the oral contract, but in legal effect declared a cause of action on the letter, signed by the defendant and accepted by the plaintiff, as a written contract complete in itself. In other words, that the intendment was to allege that the oral negotiations and agreement were merged into the letter as a written agreement. In this view the letter as a written contract, properly construed, is an agreement, other than the

drilling of eight wells, for an indefinite hiring. It is a general contract of employment, without the time. Such an agreement after drilling of the eight wells was terminable at will. The petition alleged that the eight wells were drilled and paid for, and that the contract was by the appellee terminated. A legal liability for damages for future work and promises is not therefore shown, and the demurrer as to such claim for damages was properly sustained.

[5] However, there remains the question of whether or not, as against a general demurrer, a cause of action was alleged to recover the $1,709.30 freight charges paid. This amount of money was distinctly sued for, and is based upon a promise to pay same. The statute of frauds did not reach this item of agreement, and therefore the promise to pay same was enforcible. We think the demurrer did not reach the agreement in respect to this freight claim, and that the ruling, so far as it pertained to this item, was reversible error, and for which error the judgment is reversed and the cause remanded.