REVISED OCTOBER 4, 2001

# UNITED STATES COURT OF APPEALS
## FIFTH CIRCUIT

_____

No. 00-40526

_____

BARBARA CONNER, M.D. and HARVEY RENGER, JR., M.D.,

Plaintiffs - Appellants,

versus

LAVACA HOSPITAL DISTRICT, doing business as Lavaca Medical Center, ROSEANNE GALLIA, In her official and individual capacities, SHIRLEY ROTHBAUER, In her official and individual capacities, DOLORES LEOPOLD, In her official and individual capacities, BAIBA PUSTEJOVSKY, In her official and individual capacities, BILL CURLEY, In his official and individual capacities, ARCHIE KOENNING, In his official and individual capacities, J T KOONCE, In his official and individual capacities, MAURICE WILKINSON, MD, In her official and individual capacities

Defendants - Appellees.

Appeal from the United States District Court
For the Southern District of Texas

September 28, 2001

Before POLITZ, and EMILIO M. GARZA, Circuit Judges, and KAZEN[*], District Judge.

_____

[*]     District Judge of the Southern District of Texas, sitting by designation.

EMILIO M. GARZA, Circuit Judge:

Barbara Conner, M.D. and Harvey Renger, Jr., M.D. (collectively "the Doctors") appeal the district court's partial grant of summary judgment to the Lavaca Hospital District, its board of directors, and its medical director (collectively "the Defendants"). We affirm.

**I**

From 1992 through part of 1997, the Doctors, both practitioners of family medicine, worked at the Lavaca Family Health Clinic ("the Clinic"), a rural health clinic operated by the Lavaca Hospital District ("the District"). Pursuant to written contracts, the Doctors provided services to the Clinic and leased the use of the facilities of the Clinic and the District's hospital, the Lavaca Medical Center ("the Hospital"). Dr. Conner's contracts were for one-year terms. Both her 1993 and 1994 contracts guaranteed a monthly salary plus a fixed amount for each clinic patient she treated. In 1995, Dr. Conner entered into another agreement with the District under which she received a monthly salary plus 30 percent of the gross charges from her patients at the clinic and the hospital that were generated in excess of her monthly salary.

As the expiration of her 1995 contract approached, Dr. Conner entered into negotiations with the District for a new contract. Around that same time, the Internal Revenue Service notified Dr. Conner that she had dramatically understated her income. After discussing this problem with the Hospital, she concluded that the method of billing employed under her current contract would continue to cause the understatement of her income and that it would be necessary for her new contract to separate clinic funds from hospital funds. After the expiration of her contract, Dr. Conner entered into a series of three-month stop-gap contracts, the last of which expired June 30, 1996. From the time of the expiration of her last stop-gap contract, Dr. Conner worked for the District

without a contract, continuing to negotiate for a new contract.

Dr. Renger entered into two-year contracts with the District. Dr. Renger's 1992 and 1994 contracts, like Dr. Conner's contracts, provided a monthly salary. Under these contracts, Dr. Renger received 30 percent of the gross charges that exceeded his base salary. Dr. Renger's contracts also included a provision for a three-day workweek. Dr. Renger's health problems necessitated this limited work schedule. Dr. Renger's 1994 contract was to expire at the end of 1996, and he too entered into negotiations with the District as that expiration approached.

After attempts to negotiate a new contract, the Doctors appeared at an October 21, 1996 meeting of the District's Board of Directors ("the Board"). The meeting's agenda slated the Board to "receive information from Dr. Renger and Dr. Conner on Rural Health Clinic Physician contracts" and have "consultation with the Hospital District Attorney on Rural Health Clinic Physician Agreements." With all of its members present, the Board voted unanimously to adopt the following motion[1]:

> to enter into a new agreement for Dr. Harvey Renger with a monthly compensation of $10,750.00 per month, eighteen (18) days vacation, 3-year term; the attorneys, administrator and representative of the doctor would get together with regard to the 30% additional for gross charges, what does that include, how can we legally do that, and come back to the board and the doctors for approval on that issue and the same with regard to the medical directorship position that again would be something that would be worked out preferably by the 5 doctors involved; and that Dr. Barbara Conner's agreement would be $10,750 per month, eighteen (18) days vacation, 3-year term retroactive to July 1, 1996; the attorneys, administrator and representatives of the doctor would get together with regard to the 30% additional for gross charges, what does that include, how can we legally do that, and come back to the Board and the doctors for approval on that issue and the same with regard to the medical directorship position that again would be something that would be worked out preferably by the 5 doctors involved.

---

[1]     Hereinafter referred to as the "October 21 motion."

The Board subsequently approved the minutes reflecting this motion on November 18, and both the Board's secretary and president signed the minutes.

Two days after the October 21 meeting, the Board's Executive Committee met to discuss some of its members' apprehensions about the October 21 motion. The Executive Committee decided to hold an emergency Board meeting that evening, October 23, 1996. At that emergency meeting, the Board voted to rescind the October 21 motion. Despite the motion's recission, the Doctors continued to provide services to the Clinic until April 1997. During that time, the District made other offers to the Doctors containing less lucrative terms than those contained in the October 21 motion; the parties were unable to reach an agreement.

Subsequently, the Doctors filed suit against the Defendants, alleging various federal and state law claims. They filed for partial summary judgment on a number of their claims including breach of contract, anticipatory repudiation, and the Hospital's statute of frauds affirmative defense.[2] The Defendants also filed a motion for summary judgment. The district court concluded that the October 21 motion did not satisfy the statute of frauds because: (1) the motion expressed merely an offer because it failed to show that the Doctors consented to the motion; and (2) it lacked the essential elements of a contract, with one of the terms too indefinite to enforce and two material elements missing altogether from the motion. The district court found that without an enforceable contract the following claims failed: (1) impairment of contract in violation of the Contracts Clause, U.S. Const. Art. I, § 10; (2) anticipatory repudiation and breach of contract; (3) 42 U.S.C. § 1983 claims for violation of the Doctors' due process rights; and (4) tortious interference with contract.

---

[2] The Doctors have not appealed the district court's disposition of the remainder of their claims. As such, we do not address them.

Accordingly, the district court granted summary judgment on these claims.

Pursuant to 28 U.S.C. § 1292(b), the district court certified that its order granting partial summary judgment involved "a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." A panel of this Court granted leave for interlocutory appeal.

**II**

We review a district court's grant of summary judgment de novo, using the same standards as the district court. *See McClendon v. City of Columbia*, 258 F.3d 432, 435 (5th Cir. 2001). We view the evidence in the light most favorable to the party opposing the motion, drawing all reasonable inferences in that party's favor. *See Rios v. Rossotti*, 252 F.3d 375, 378 (5th Cir. 2001); *Auguster v. Vermilion Parish Sch. Bd.*, 249 F.3d 400, 402 (5th Cir. 2001). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552-53, 91 L. Ed. 2d 265 (1986). We can affirm a grant of summary judgment on any grounds supported by the summary judgment record. *See Cabrol v. Town of Youngsville*, 106 F.3d 101, 104 (5th Cir. 1997).

On appeal, the Doctors contend that: (1) the district court erred in finding that the motion was not an enforceable contract under the statute of frauds; (2) that even if the motion failed to satisfy the statute of frauds, their part performance took the contract out of the statute of frauds; and (3) in support of their § 1983 claims, the Doctors asseverate that, even without an enforceable contract, they had a legitimate claim of entitlement to continued employment, and thus had a property interest

protected by the Due Process Clause.  We address each of these contentions in turn, finding none of them availing.

**A**

Under Texas law,[3] whether a contract falls within the statute of frauds is a question of law. *See Choi v. McKenzie,* 975 S.W.2d 740 (Tex. App.—Corpus Christi 1998).  A promise that is not performable within a year of its inception must satisfy the statute of frauds.  *See* Tex. Bus. & Com. Code Ann. § 26.01(b)(6) (Vernon 1987).  In the case at bar, the October 21 motion contains a three-year term of employment, placing it squarely within the statute of frauds.

To satisfy the statute of frauds and thus be enforceable, the oral agreement must be evidenced by "a written memorandum which is complete within itself in every material detail, and which contains all of the essential elements of the agreement, so that the contract can be ascertained from the writings without resorting to oral testimony."  *Cohen v. McCutchin*, 565 S.W.2d 230, 232 (Tex. 1978); *see EP Operating Co. v. MJC Energy Co.*, 883 S.W.2d 263, 267 (Tex. App.—Corpus Christi 1994, writ denied).  The minutes of a board meeting can satisfy this writing requirement.  *See, e.g.*, *Republic Supply Co. v. Waggoner*, 283 S.W. 537, 539 (Tex. Civ. App.—Amarillo 1926, writ ref'd) (minutes were sufficient memorandum of oral contract); *Kerby v. Collin County*, 212 S.W.2d 494, 496 (Tex. Civ. App.—Dallas 1948, no writ) (same).  It must also be signed by the party charged with its enforcement.  *See* Tex. Bus. & Com. Code Ann. § 26.01(a)(2) (Vernon 1987).

Generally, duration, compensation, and the employee's duties are essential elements of an employment contract.  *See Foley & Whitehill v. Tex. Co.*, 252 S.W. 566, 568 (Tex. Civ.

---

[3]     The district court exercised supplemental jurisdiction over the Doctors' state law claims.  *See* 28 U.S.C. § 1367.  Texas law governs the disposition of these claims.

App.—Texarkana 1923, writ dismissed w.o.j.) (duration is an essential element); *Hurt v. Standard Oil Co.*, 444 S.W.2d 342, 346 (Tex. Civ. App.—El Paso 1969, no writ) (employee stock plan failed to satisfy statute of frauds where it did not contain, *inter alia*, "the wages to be paid"); *Farrar v. Colo. Indep. Sch. Dist.*, 444 S.W.2d 204 (Tex. Civ. App.—Eastland 1969, writ ref'd n.r.e.) (board minutes failed to set out terms of employment contract such as "compensation, the duties to be performed, [and] the working hours"); *see also Martin v. Credit Protection Ass'n*, 793 S.W.2d 667, 669 (Tex. 1990, writ dismissed w.o.j.) (covenant not to compete was not ancillary to an employment contract where contract "did not contain any terms or provisions usually associated with an employment contract such as title, position, duration of employment, compensation, duties or responsibilities"). While these are often the terms of an employment contract, under Texas contract law, "[e]ach contract [is] considered separately to determine its material terms." *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992, no writ). Thus, even if the terms set out in the memorandum under consideration previously have been found to satisfy the statute of frauds, those terms are not necessarily sufficient in the case at hand. *See Lynx Explor. & Prod. Co. v. 4-Sight Oper. Co.*, 891 S.W.2d 785, 788 (Tex. App.—Texarkana 1995, writ denied) (finding that although elements set out in contract had been found to satisfy the statute of frauds in another case, the incorporation of additional indefinite terms in the case at bar made the contract unenforceable). The parties can leave some of the contract's terms open for future negotiation. *See Scott v. Ingle Bros. Pacific, Inc.*, 489 S.W.2d 554, 555 (Tex. 1972) ("But parties may agree upon some of the terms of a contract, and understand them to be an agreement, and yet leave other portions of an agreement to be made later."). Nonetheless, those terms left open cannot be essential or material elements of the contract because leaving such terms open renders the contract unenforceable under the statute

of frauds.  *See Valores Corporativos, S.A. de C.V. v. McLane Co.*, 945 S.W.2d 160, 166 (Tex. App.—San Antonio 1997, pet. denied) ("When a material element is left unresolved and subject to future negotiations, there is no binding contract." (internal quotations and citations omitted)).  In determining whether a term is an essential element of a contract, we look at whether a party's rejection of the "term [] could have affected the negotiation of the other terms."  *CRSS Inc. v. Runion*, 992 S.W.2d 1, 6 (Tex. App.—Houston [1st Dist.] 1995, pet. denied); *see Neeley v. Bankers Trust Co.*, 757 F.2d 621, 628 (5th Cir. 1985) (applying Texas law) ("[A]n 'essential' promise denotes one that the parties reasonably regarded, at the time of contracting, as a vitally important part of the bargain.  Failure to fulfill such a promise, in other words, would seriously frustrate the expectations of one or more parties as to what would constitute sufficient performance of the contract as a whole.").

The Doctors contend that the October 21 motion satisfied the statute of frauds because the contract contained the essential elements of an employment contract, namely, monthly salary, duration, and vacation terms.  The motion does not outline how the gross charges were to be attributed for tax purposes, nor does it include Dr. Renger's limited work schedule.  Nevertheless, the Doctors maintain that the absence of these terms does not prevent the motion from satisfying the statute of frauds because these terms were not essential elements, and, therefore, could be left for future negotiation.

With respect to the attribution of the gross charges, the Doctors assert that this is a ministerial detail, and as such could be left open.  The Doctors compare this term to the payment of taxes or insurance in *McCulley Fine Arts Gallery, Inc. v. "X" Partners*, 860 S.W.2d 473, 477 (Tex. App.—El Paso 1993, no writ), which the Texas Court of Appeals concluded were "details [] involv[ing] the

form and not the substance of the transaction" and therefore were not essential elements of the contract. Unlike in *McCulley*, where no party indicated that taxes and insurance payments were of any import, Dr. Conner testified as to the significance of the attribution term to her. The IRS notified her that she had dramatically understated her income. Dr. Conner concluded this problem arose from the terms of her last one-year contract and, to prevent this problem, she sought to have included in her contract a term clarifying the attribution of Clinic and Hospital revenues. Thus, while the attribution could in other circumstances be simply a ministerial term concerning the form of the transaction, Dr. Conner's testimony established that she considered the attribution of gross charges a necessary term in the new contract. Consequently, we find that this term was an essential element of a contract between Dr. Conner and the District and its absence from the October 21 motion renders the contract unenforceable as to Dr. Conner.

As with the attribution of income, the Doctors maintain that Dr. Renger's schedule term was a detail that could be left open. Specifically, the Doctors correctly assert that Dr. Renger's schedule was not the source of any disagreement among the parties and that all terms agreed upon by the parties need not appear in the writing. *See Preload Tech. Inc. v. A.B. & J. Constr. Co.*, 696 F.2d 1080, 1089 n.13 (5th Cir. 1983) (applying Texas law) (a memorandum of an agreement "need not embody all terms agreed upon"); *Botello v. Misener-Collins, Co.*, 469 S.W.2d 793, 794 (Tex. 1971). Nonetheless, the proposition that all the terms agreed upon by the parties need not appear in the memorandum governs only if the schedule is not an essential element because the essential elements of a contract must appear in the writing to satisfy the statute of frauds. In short, we must first decide whether the schedule is an essential element of the contract.

To this end, the Doctors point to cases where Texas courts have enforced contracts that were

silent as to the employee's schedule. *See Winograd v. Willis*, 789 S.W.2d 307, 310 (Tex. App.—Houston [1st Dist.] 1990, writ denied); *Bordeleau v. Universal Weather & Aviation*, 629 S.W.2d 180, 181-82 (Tex. App.—Waco 1982, writ ref'd n.r.e.). In doing so, the Doctors assume that if an employee's schedule was not an essential element in one contract, a schedule is not an essential element in another contract. This approach ignores that the determination of whether a term is essential must be done with respect to the contract and the particular circumstances in each case. In this case, it is undisputed that Dr. Renger had health problems that limited his work schedule. Past contracts with the District provided Dr. Renger with a three-day workweek in the Clinic. Altering Dr. Renger's schedule to require a full workweek would have had serious negative consequences for the negotiation of his contract given that the schedule was borne out of medical necessity rather than mere convenience. Consequently, Dr. Renger's schedule is an essential element of the contract and had to be expressed in the October 21 motion.

The Doctors also claim that Dr. Renger's contract is a renewal contract, and, therefore, we can imply the schedule term as part of his contract. We disagree. First, the October 21 motion was not simply a renewal contract. The motion changed material terms of the Doctors' employment contract, such as their salaries. Moreover, the motion itself refers to the agreement as "new" and it does not allude to the terms of past contracts. Therefore, the October 21 motion can only be considered a "renewal contract" if a renewal contract is defined generally as a contract between parties who had a previous contractual relationship and who are negotiating for a subsequent contract, a broad definition for which we have found no support in Texas law.

Second, even if it was a renewal contract, the Doctors have supplied no authority, nor have we found any, for the proposition that a term that would otherwise be an essential element can be

implied from its inclusion in earlier contracts where the contract being negotiated is a "renewal contract." *See also Montgomery County Hosp. Dist. v. Brown*, 965 S.W.2d 501, 503 (Tex. 1998) (noting in statute of frauds case that "*[e]ven if a term can be supplied by implication*, there is no basis for doing so in this case" (emphasis added)). Instead, we find instructive the requirement that where an oral contract is memorialized in more than one writing, one of the writings must refer to the others in order for the writings to be read together. *See Owen v. Hendricks*, 433 S.W.2d 164, 166 (Tex. 1968); *see also Boddy v. Gray*, 497 S.W.2d 600, 603 (Tex. Civ. App.—Amarillo 1973, writ ref'd n.r.e.) ("[W]e can only look to the writings for the essential elements of an alleged contract."). The October 21 motion makes no reference to the schedule set out in previous contracts nor to any of the prior agreements between the Doctors and the District. Hence, this argument fails, rendering the motion unenforceable as to Dr. Renger.

In short, while the October 21 motion states terms that often constitute the essential elements of an employment contract, we find that the motion does not satisfy the statute of frauds because it fails to address the attribution of Clinic and Hospital funds and Dr. Renger's schedule, which we conclude are material elements. Thus, the oral contract is unenforceable.[4]

**B**

The Doctors contend that even if the contract fails to satisfy the statute of frauds, their part performance took the contract out of the statute of frauds. Part performance of an oral contract can remove a contract from the statute of frauds when the promisee "performs the contract to such a

---

[4] The Doctors also contend that the district court erred in finding that the motion expressed an agreement to agree and that the 30 percent of gross charges provision was an essential element of the contract but was too indefinite for the court to enforce. Our conclusion that the absence of the attribution and schedule terms makes the contract unenforceable under the statute of frauds obviates any discussion of these contentions and we express no opinion as to their merits.

degree that application of the statute [of frauds] would defeat its true purpose." *Duggan v. Benny*, 205 S.W.2d 829, 864 (Tex. Civ. App.—Amarillo 1947, no writ); *see* 41 Tex. Jur. 3d § 140 (part performance is an "exception" to the statute of frauds). The Doctors can obtain relief under this equitable doctrine if they acted in reliance on the contract and "suffered a substantial detriment" as a result of that reliance "for which [there is] no adequate remedy, and the other party, if permitted to plead the statute [of frauds] would reap an unearned benefit." *Central Power & Light Co. v. Del Mar Conservation Dist.*, 594 S.W.2d 782, 790 (Tex. Civ. App.—San Antonio 1980, writ ref'd n.r.e.). In order to attribute the Doctors' performance to their reliance on the contract, that performance must be "unequivocally referable to the agreement and corroborative of the fact that a contract actually was made." *Wiley v. Bertelsen*, 770 S.W.2d 878, 882 (Tex. App.—Texarkana 1989, no writ); *see Leon Ltd. v. Albuquerque Commons P'ship*, 862 S.W.2d 693, 702 (Tex. App.—El Paso 1993, no writ); *see also Boyert v. Tauber*, 834 S.W.2d 60, 63 (Tex. 1992) (for part performance to take a contract for the sale of real property out of the statute of frauds, the purchaser must "make[] permanent and valuable improvements on the property with the consent of the seller, or, without such improvements, other facts are shown that would make the transaction a fraud on the purchaser if the oral contract was not enforced").

The Doctors maintain that they were not fully compensated for the services they rendered while each of them continued to work at the Clinic without a contract, and, therefore, unless we apply the doctrine of partial performance, the District will receive an unearned benefit. An unearned benefit per se is not sufficient to grant relief under this doctrine; instead, as discussed above, the Doctors' performance must unequivocally corroborate that the parties entered into a contract. Even if the October 21 motion had created an enforceable contract, the October 23 motion repudiated that

-12-

contract. Any services provided after that repudiation cannot reasonably be said to have been in reliance on the October 21 motion. *See also Hampton v. Minton*, 785 S.W.2d 854, 857 (Tex. App.—Austin 1990, writ denied) ("[O]ne party's repudiation of a duty to perform, or a breach of the contract of such materiality as to indicate an intention to repudiate the contract, excuses or discharges the other party's remaining obligation to perform."); 28 Tex. Jur. 3d § 196 (1996) ("The injured party cannot, while in the performance of the contract, on being served with notice of its repudiation by the other party, proceed with the performance of the contract and increase the damages to which such injured party would otherwise be entitled."). Furthermore, we find unremarkable the Doctors' attendance at work subsequent to the October 21 motion. Dr. Renger remained under his previous contract with the District until the end of the year, and Dr. Conner had continued to work for the District even without a contract following the expiration of her last stop-gap contract several months earlier. Therefore, the Doctors' continued provision of services, compensated or not, does not establish part performance removing the October 21 motion from the statute of frauds and the Doctors' part performance argument fails.

## C

In support of their § 1983 claims,[5] the Doctors contend that they had a property interest in

---

[5]     42 U.S.C. § 1983 provides in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

their employment with the District, triggering the procedural protections afforded by the Fourteenth Amendment's Due Process Clause. The Due Process Clause is only implicated when a person has a constitutionally protected interest in life, liberty, or property. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541, 105 S. Ct. 1487, 1492, 84 L. Ed. 2d 494 (1985); *Bd. of Regents v. Roth*, 408 U.S. 564, 569, 92 S. Ct. 2701, 2705, 33 L. Ed. 2d 548 (1972). The Constitution does not create property interests. Instead, property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Roth*, 408 U.S. at 577, 92 S. Ct . at 2709. In the public employment context, public employees, like the Doctors, have a "property interest in [their] employment only when a legitimate right to continued employment exists." *McDonald v. City of Corinth, Tex.*, 102 F.3d 152, 154 (5th Cir. 1996) (citing *Perry v. Sindermann*, 408 U.S. 593, 601-02, 92 S. Ct. 2694, 2699-2700, 33 L. Ed. 2d 570 (1972)). As set forth *infra* Sections I.A. and I.B., the Doctors do not have an enforceable contract with the District. Furthermore, the motion would not be enforceable as an implied contract because a contract that fails the statute of frauds cannot be enforced as such a contract under Texas law. *See Oliver v. Rogers*, 976 S.W.2d 792, 807 (Tex. App.—Houston [1st Dist.] 1998, pet. denied) (implied contract must satisfy the statute of frauds to be enforceable); *Mandell v. Hamman Oil & Ref. Co.*, 822 S.W.2d 153, 161 (Tex. App.—Houston [1st Dist.] 1991, writ denied).

Notwithstanding the absence of an enforceable contract, the Doctors maintain that they had a legitimate expectation of continued employment because they had a mutually explicit understanding with the Board, and, thus, they had a property interest. In support of their assertion that a property interest can be derived from a mutually explicit understanding absent an enforceable contract, the

-14-

Doctors rely on *Stapp v. Avoyelles Parish School Board*, 545 F.2d 527 (5th Cir. 1977), and *Gosney v. Sonora Independent School District*, 603 F.2d 522, 525 (5th Cir. 1979). We find, however, that these cases are distinct from the case at bar, making the Doctors' reliance on them unavailing.

In *Stapp*, the superintendent of the school district wrote a letter to the non-tenured principal, Roy Stapp, informing Stapp that his work had been satisfactory and that the superintendent would recommend to the school board that Stapp be re-employed for the following school year. The superintendent's letter further informed Stapp that if he demonstrated his intent to work for the school system the following year, the school system would consider him to be under contract, with a release from that contract only under "urgent and unforseeable circumstances." *Id.* at 528. Stapp indicated his intent to continue as principal. Sometime after indicating this intent, "a struggle over replacement of the Bunkie High School football coach [] reached its critical phase." *Id.* As a result of this struggle, the superintendent sent a letter to the school board recommending against the renewal of Stapp's contract. The school board adopted the superintendent's recommendation and discharged Stapp.

We found that Stapp had a property interest in re-employment.[6] Unlike the case at bar,

_____

[6]     The district court concluded that we had backed away from our holding in *Stapp* that a mutually explicit understanding, though not necessarily enforceable under state contract law, could give rise to a constitutionally protected property interest and that we had taken the approach that such an understanding must be enforceable under state law. Our precedent contains instances supporting and contravening the district court's view. *Compare Garcia v. Reeves County, Tex.*, 32 F.3d 200, 203-04 (5th Cir. 1994); *Moulton v. City of Beaumont*, 991 F.2d 227, 230-31 (5th Cir. 1993); *Farias v. Bexar County Bd. of Trs. for Mental Health Retardation Servs.*, 925 F.2d 866, 877 (5th Cir. 1991); *Burris v. Willis Indep. Sch. Dist.*, 713 F.2d 1087, 1090 (5th Cir. 1983); *White v. Thomas*, 660 F.2d 680, 684 (5th Cir. 1981); *White v. Miss. State Oil & Gas Bd.*, 650 F.2d 540, 542 (5th Cir. 1981); *with Cabrol v. Town of Youngsville*, 106 F.3d 101, 105 (5th Cir. 1997); *Bueno v. City of Donna*, 714 F.2d 484, 491-92 (5th Cir. 1983); *McMillian v. City of Hazlehurst*, 620 F.2d 484, 485 (5th Cir. 1980). Given the less than pellucid state of our precedent, *Stapp*'s holding may merit revisiting. Nonetheless, as the Doctors correctly observe, we may not overrule another panel's

however, the school board had taken actions that evinced unmistakable reliance on the exchange of letters: the school board relied on teachers' and principals' responses to the letters of intent to prepare the student and teacher assignment ratios. Therefore, we concluded that "the offer of continued employment in the letter *coupled with* the admitted reliance by School Board on Principal's affirmative response *and* the expressed binding nature of such an acceptance falls into the class of property interests protected by the due process procedural requirements." *Id*. at 532 (emphasis added). In *Stapp*, the School Board's reliance established that there was a mutually explicit understanding. Missing from the case at bar is evidence of the Board's unequivocal reliance on the October 21 motion, undermining the Doctors' attempt to show the existence of a mutually explicit understanding. While the Doctors contend that the press release issued after the meeting is some evidence that the agreement was mutually explicit, the press release is not the kind of unmistakable reliance on which *Stapp* rested. Even if the agreement did not come to fruition, the press release did not place the District in a worse position. By contrast, in *Stapp*, the school board undoubtedly had to reconfigure the teacher assignments after declining to renew Stapp's contract. Thus, the record does not show that the Board undertook any action in unequivocal reliance on the October 21 motion.

The Doctors also rely on *Gosney*. In *Gosney*, the school board adopted motions to rehire teachers Billy C. Gosney and Mary Lynn Gosney for the 1974-1975 school year, and entered those motions into the board's official minutes. Subsequent to the adoption and entry of motions, the board

---

decision and thus *Stapp* remains good law. *See United States v. Taylor*, 933 F.2d 307, 313 (5th Cir. 1991).

voted not to renew their contracts due to the Gosneys' involvement in their newly-acquired dry goods store. *Gosney*, 603 F.2d at 523-24. In asserting a claim of the denial of procedural due process, Mr. Gosney claimed that because the minutes constituted legal, binding action under the school board's policies that he had a property interest in his employment for the 1974-1975 school year. We agreed, finding that "[i]n light of the expressed binding nature of the minutes, they secured to him a legitimate, nonsubjective claim of entitlement to renewal for purposes of due process protection." *Id.* at 525.

The Doctors point us to no District policy that provides that the Board's minutes are legally binding, as was the case in *Gosney*. Nor have we found any such policy in the record. Nonetheless, recognizing that the existence of such a policy was the linchpin in our reasoning in *Gosney*, the Doctors attempt to substitute Tex. Gov't Code Ann. § 551.021 for such a policy. This substitution fails to provide the necessary link. Section 551.021 merely provides that a governmental body must make some record of its meetings, be it through minutes or a tape recording, and sets forth the requisite content of the record (e.g., the subject of discussion and actions taken by the board).[7] This section does not address whether or not the acts of the Board are binding. Absent any policy or statute declaring the minutes legally binding, the Doctors' reliance on *Gosney* is misplaced.

In the end, what the Doctors are left to rely upon in asserting the existence of a property interest is the content of the motion. In Texas, employment is at will. *See, e.g.*, *Loftis v. Town of*

_____

[7] Section 551.0121 provides:

(a) A governmental body shall prepare and keep minutes or make a tape recording of each open meeting of the body.
(b) The minutes must:
    (1) state the subject of each deliberation; and
    (2) indicate each, vote, order, decision, or other action taken.

*Highland Park*, 893 S.W.2d 154, 155 (Tex. App.—Eastland 1995, no writ). Unless a contract exists to alter that at-will status, the Doctors have only a unilateral expectation of continued employment, leaving them without a protected property interest. *See also id.* (without an agreement altering employment at-will status, an employee may be terminated at any time). No contract exists here. Accordingly, we find that the Doctors failed to demonstrate the existence of a property interest, and consequently their § 1983 claims fail.

## III

For the foregoing reasons, we AFFIRM the district court's judgment.