United States Court of Appeals
Fifth Circuit

**F I L E D**

**April 19, 2006**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 05-10503

_____

IN THE MATTER OF: EBENEZER K. EKUBAN,

Debtor.

------------------------

FIRST UNION NATIONAL BANK, as Indenture Trustee,

Appellant,

versus

EBENEZER K. EKUBAN,

Appellee.

On Appeal from the United States District Court
for the Northern District of Texas
Docket No. 3:04-CV-01181-L

Before JONES, Chief Judge, and WIENER and PRADO, Circuit Judges.

PER CURIAM:[*]

First Union National Bank ("First Union" or "the bank")
appeals the district court's judgment affirming the bankruptcy
court's grant of summary judgment to Ebenezer Ekuban ("Ekuban"), as
well as the bankruptcy court's denial of First Union's motion for
summary judgment. Because we agree that guaranty documents signed
by Ekuban were unenforceable pursuant to Texas's statute of frauds,

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this
opinion should not be published and is not precedent except under the limited
circumstances set forth in 5TH CIR. R. 47.5.4.

and First Union was not entitled to summary judgment on either of its claims, we AFFIRM.

## I.  Background

Ekuban is a professional football player who was selected in the first round of the NFL Draft in 1999.  In August 2000, Ekuban decided to purchase a block of thirty-six condominiums in Pasadena, TX.  Bayview Financial Trading Group agreed to provide financing to Ekuban, and the company then had Chicago Title Insurance Company ("Chicago") draft the loan documents for the deal.  Chicago structured the transaction as thirty-six separate purchases.  On August 14, 2000, Ekuban, in his capacity as president of EBCO Partners, LLC ("EBCO"),[1] executed thirty-six sets of promissory notes and related closing documents.  The deal was designed to create a real estate mortgage trust, with First Union acting as the indenture trustee.  As a result of this structure, First Union ultimately obtained nominal title to the notes.

At a separate time, Ekuban received and executed thirty-six identical guaranty agreements, which stated:

---

[1]     EBCO was formed as a holding company for Ekuban's investments.

Guaranty Agreement
FOR VALUE RECEIVED, I, EBENEZER EKUBAN, individually, do hereby guarantee payment of the hereinabove described note, according to the terms thereof, both as to interest and as to principal, and I do hereby waive demand, all notices including notice of intention to accelerate the maturity, notice of non-payment, presentment for payment, protest, notice of protest, suit, diligence and any notice of or defense on account of the extension of the time of payments or change in methods of payments and consent to any and all renewals and extensions in the time of payment hereof.

Absent from the guaranty agreements was any reference to a specific loan or account number that would associate the guaranty with the Pasadena transaction.

The Pasadena investment performed poorly, and EBCO defaulted on its loans in the spring of 2002. Ekuban did not honor the alleged guaranty, and both EBCO and he filed for Chapter 7 bankruptcy protection on June 10, 2003. First Union filed a timely Proof of Claim for the money loaned in the amount of $1,641,000. The bank also filed a complaint seeking to have Ekuban's loans declared nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A). Ekuban moved for summary judgment, on the ground, inter alia, that the guaranty documents were unenforceable pursuant to the Texas statute of frauds. First Union cross-moved for summary judgment asserting that Ekuban's fraud was indisputable as a matter of law.

The bankruptcy court granted Ekuban's motion for summary judgment and denied First Union's motion without considering it on the merits. The bank appealed to the district court, which

3

affirmed. This timely filed appeal is considered pursuant to 28 U.S.C. § 1291.

## II. Discussion

In bankruptcy appeals, this court "perform[s] the same function, as did the district court: Fact findings of the bankruptcy court are reviewed under a clearly erroneous standard and issues of law are reviewed de novo." Nationwide Mut. Ins. Co. v. Berryman Prods. (In re Berryman), 159 F.3d 941, 943 (5th Cir. 1998). This court reviews a grant of summary judgment de novo. Evans v. City of Houston, 246 F.3d 344, 347 (5th Cir. 2001). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 312-33, 106 S. Ct. 2548, 2552-53 (1986).

### A. Statute of Frauds

In order to satisfy the Texas statute of frauds which applies here, an agreement must be "complete within itself in every detail, and . . . contain[] all the essential elements of the agreement." Cohen v. McCutchin, 565 S.W.2d 230, 232 (Tex. 1978).

The guaranty agreements in the instant case cannot satisfy the statute of frauds because they lack the "essential elements" of a guaranty. The essential terms of a guaranty

4

agreement are "(1) the parties involved, (2) a manifestation of intent to guaranty the obligation, and (3) a description of the obligation being guaranteed." Material P'Ships v. Ventura, 102 S.W.3d 252, 261 (Tex. App. 2003); Park Creek Assocs., Ltd v. Walker, 754 S.W.2d 426, 429 (Tex. App. 1988, writ denied). While these guaranty agreements manifest Ekuban's intention to guarantee an obligation, they are in every other aspect deficient. Save Ekuban himself, the guaranties do not identify the parties involved in the transaction or their roles. Nor do the agreements provide a description of the note to be guaranteed or such basic information as dates and the amount of the loan.

First Union argues that this court should look beyond the text of the guaranty agreements to determine whether the agreements satisfy the statute of frauds. We decline to do so, noting that although the Texas Supreme Court has in the past looked to multiple documents to determine whether a contract comports with the statute of frauds, it has only done so where, "[a]ll of the instruments were a necessary part of the same transaction, without any one of which the transaction was not complete." Jones v. Kelley, 614 S.W.2d 95, 98 (Tex. 1981)(quoting Great S. Life Ins., 239 S.W.2d at 809). First Union asserts that the guaranty was necessary to effectuate the transaction, but as a matter of contractual interpretation, the Pasadena transaction was complete without a guaranty. Further, the guaranty agreements make no

5

reference to the closing documents, and the closing documents do not contemplate the existence of a guaranty. To construe the guarantee agreements as part of the larger financial transaction would thus violate the principle that "where an oral contract is memorialized in more than one writing, one of the writings must refer to the others in order for the writings to be read together." Conner v. Lavaca Hosp. Dist., 267 F.3d 426, 435 (5th Cir. 2001)(applying Owen v. Hendricks, 433 S.W.2d 164, 166 (Tex. 1968)). The bank's contention that the guaranties were an indispensable part of the transaction finds no support within the language of the contracts themselves.

First Union argues in the alternative that the guaranty agreements qualify for the "main purpose" exception to the statute of frauds, an exception whereby a guarantor may be bound as a principal obligor. The bank, however, cites no authority for its novel position that written contracts are subject to the main purpose rule; indeed, what limited case law exists on the main purpose rule applies the exception to oral contracts only. A sophisticated party like the bank cannot point to deficiencies in its own writings as a reason why it should not be bound by the statute of frauds.[2] Because the guaranty documents do not satisfy

---

[2] Even assuming arguendo that the main purpose rule extended to written contracts, because in the instant case the guaranty agreements do not provide any evidence that Ekuban intended to become primarily liable for specific loans, the main purpose rule is still inapplicable. Butler Aviation Int'l, Inc. v. Whyte (In re Fairchild Aircraft Corp.), 6 F.3d 1119, 1127 (5th Cir. 1998).

6

the statute of frauds, and the main purpose rule does not apply here, the lower courts did not err in determining that the guaranties were unenforceable as a matter of law.

B.   **First Union's Claims**

First Union alleges that the lower courts erred in denying its motion for summary judgment against Ekuban without considering it on the merits. However, the only "Basis for Claim" before the bankruptcy court was for the "money loaned" by First Union to Ekuban. The lower courts rejected "any contention by the bank that the debt is based on fraud;" because the lower courts correctly determined that the guaranty agreements were unenforceable, dismissal of the complaint was proper.

Similarly, once the lower courts determined that the guaranty agreements were unenforceable, the bank was not entitled to summary judgment as to its 11 U.S.C. § 523 (a)(2)(A) claim. The bank must first have a "debt" owed to it before it can make a case for nondischargeability under § 523, and once the issue of the guaranty agreements had been resolved, no such debt existed. Summary judgment in favor of Ekuban was therefore appropriate.

**CONCLUSION**

For the foregoing reasons, the judgments of the district and bankruptcy courts are **AFFIRMED.**

7