Harvey BAKER, Appellant,

v.

LOCKHEED AIRCRAFT SERVICE COMPANY et al., Appellees.

No. 16053.

Court of Civil Appeals of Texas, San Antonio.

June 27, 1979.

Rehearing Denied July 25, 1979.

Pat Maloney, Jr., Jack Pasqual, Samuel C. Fried, San Antonio, for appellant.

Jack Hebdon, Thomas H. Crofts, Jr., Groce, Locke & Hebdon, San Antonio, for appellees.

CADENA, Chief Justice.

Plaintiff, Harvey Baker, appeals from a judgment, based on jury findings, that he take nothing by his suit against defendants for breach of an alleged contract of employment under which Lockheed Aircraft Service Company, a division of Lockheed Corporation, was to employ plaintiff. The other defendant was Bob Savage, but no issues concerning the liability of Savage were submitted to the jury and we find nothing in plaintiff's brief indicating that the judgment in favor of Savage was erroneous. For the purposes of this opinion, then, we shall treat Lockheed Aircraft Service Company ("Lockheed") as being the only defendant before this Court.

The evidence may be summarized as follows:

1. Plaintiff, a retired United States Civil Service worker, learned that Lockheed was preparing to initiate a new project in Iran. He applied to Lockheed for employment on such project and in October, 1976, following some telephonic communications between plaintiff and Dennis Shea, Lockheed's vice president in charge of Iranian operations, plaintiff flew to Lockheed's offices in Ontario, California, for a personal interview. On the basis of this interview, plaintiff was considered a strong candidate for General Manager, Procurement, in connection with the proposed Iranian project.

2. Plaintiff then returned to San Antonio. On December 17, 1976, Shea telephoned plaintiff from California and told him, "the number one job is yours." On December 21, 1976, Dale Lucas, Lockheed's manager of professional personnel, telephoned plaintiff and offered a base annual salary of $28,600.00. Plaintiff expressed dissatisfaction with that figure. Lucas called plaintiff again the following day and

told plaintiff that $28,600.00 was Lock-. heed's highest figure. At that time plaintiff agreed to accept the offered salary. During this conversation Lucas told plaintiff, "Harvey, you have the job." Lucas pointed out that plaintiff would have to leave for Iran shortly after January 1, 1977, and requested that plaintiff make arrangements to receive the required innoculations and that he have passport pictures made. Plaintiff received the required innoculations and obtained the passport pictures.

3. Lucas, by telephone, had also told plaintiff's wife that plaintiff "has the job" and agreed that Mrs. Baker should give her then employer notice of her intention to resign. At some period during these conversations, plaintiff was told that he would be able to stop over in Rome on his way to Iran for about three days to visit relatives.

4. Plaintiff testified that at no time during the oral negotiations was mention made of a written contract.

5. Under date of December 28, 1976, Lockheed sent a letter to plaintiff. This letter was as follows:

It is a pleasure to acknowledge your acceptance of our recent tentative offer of employment as referenced below. This offer is contingent upon you and, if on accompanied status, each of your accompanying dependents passing our physical examination, obtaining a passport and necessary visas, reference checks, successfully passing our test, if applicable, and your agreeing to the terms as outlined in the enclosed Summary of Benefits and Compensation.

We have arranged for you to report for personnel processing [at Ontario, California, at 8:00 a. m., January 10, 1977]. Please bring your original Social Security card and, if applicable, your military separation papers with you. You may indicate agreement by signing the copy of this letter on the line below and returning it in the envelope provided.

Your work assignment will be in Iran. Length of assignment is two years or until work assignment is complete, whichever comes first. You are provided per diem enroute and until housing is obtained unless food and lodging are provided directly or indirectly by the company or in-transit airline.

Please take immediate action on the items specified on the enclosed checklist. We look forward to your joining us.

| | |
|---|---|
| POSITION: | General Department Manager-Procurement & Production |
| BASE RATE: | $550.00 per week |
| ANNUAL OVERSEAS BONUS: | $8,580.00 |
| TOTAL ANNUAL SALARY: | $37,180.00 |

Plaintiff signed the letter at the bottom and returned it to Lockheed.

6. On January 5, 1977, Lucas called plaintiff and told him he was no longer being considered for the job. On the same day, Lucas sent plaintiff a telegram in which he informed plaintiff that as a result of "further evaluation and assessment of" plaintiff's "total qualifications for the position offered, . . . LAS is withdrawing its offer of employment." The telegram added that plaintiff would be reimbursed for actual costs he may have incurred "relative to this offer of employment, such as photographs, innoculations, and passport . . . .."

In his petition, plaintiff alleged that he had accepted Lockheed's offer of employment, and that the parties had intended that plaintiff would be employed by Lockheed for two years.

In its answer Lockheed alleged that it had made a tentative offer of employment contingent on certain matters, including a "reference check"; and, as a result of the reference check, including investigation of plaintiff's prior employment history, Lockheed determined that plaintiff was not a proper candidate for the "job he was being considered for, and, therefore, he was not employed, and there never was a binding contract because the contingency requirement (reference check) was never satisfied."

Only one liability-fixing issue was submitted to the jury. This issue, with the jury's answer, was as follows:

Question No. 1: Do you find from a preponderance of the evidence that·the defendant . . . revoked its offer of employment to the plaintiff . . . for reasons other than information revealed by reference checks?

Answer "We do" or "We do not."

We, the jury, answer: *We do not.*

In answer to issue no. 2, the jury fixed $28,000.00 as the amount of plaintiff's damages.

Plaintiff's first four points of error, as summarized in his brief, concern the failure of the trial court to award judgment to plaintiff for $28,600.00. Basically, plaintiff's contention is that he and Lockheed entered into a binding contract of employment and that Lockheed's claim that it was empowered to revoke its offer of employment because the offer was contingent upon "reference check" must be disregarded, since such contingency was "not mentioned or in any way included by the parties when they formed their intention to contract, and said parties did thereafter mutually assent, without reservation, to all the terms of said contract."

Plaintiff concedes that under the statute of frauds, the agreement in question is unenforceable unless it, or a memorandum thereof, is in writing and signed by the person to be charged (Lockheed) or by someone authorized to sign for such person. Tex.Bus. &·Com.Code Ann. § 26.01(a) (Vernon 1968) and § 26.01(b) (Vernon Supp. 1978–1979). However, plaintiff takes the position that the letter from Lockheed, dated December 28, 1976, is a sufficient writing to satisfy the requirements of the statute.

■ The letter falls short of evidencing the agreement which plaintiff seeks to enforce. It speaks of a "tentative" offer and unequivocally makes such offer subject to certain contingencies. Plaintiff's reference to a binding unconditional contract can be supported only by considering the oral negotiations and alleged oral agreement antedating the written memorandum. Plaintiff's position, simply stated, is that we treat the letter as sufficient to satisfy the

requirement of a writing and then disregard the contents of the letter and enforce, instead, an oral agreement which differs in at least one essential respect from the writing.

■ With respect to agreements described in the statute of frauds, the statute requires that there be a written memorandum which is complete within itself in every material detail and which contains all of the essential elements of the agreement, so that the contract can be ascertained from the writing without resorting to oral testimony. *Cohen v. McCutchin,* 565 S.W.2d 230, 232 (Tex.1978). *See also Wilson v. Fisher,* 144 Tex. 53, 188 S.W.2d 150 (1945).

It is, therefore, clear that what the courts may enforce is the written agreement, not the parol agreement which it purports to reflect. The written agreement in this case is subject to a condition precedent. If the memorandum reflected an unconditional binding agreement, an oral condition certainly could not be enforced because to enforce the oral condition would be "to change a binding contract . . . into a contingent contract." *Zeluff v. Ekman,* 386 S.W.2d 838, 842 (Tex.Civ.App.—Houston 1965, no writ).

■ Plaintiff's offer of oral testimony for the purpose of converting a conditional obligation into an unconditional one runs afoul of the parol evidence rule, and there can be no doubt that the writing must prevail. 2 C. McCormick and R. Ray, Texas Law of Evidence § 1634 at 490–91 (2d ed. 1956). The rule is applicable with greater force when, as here, the contract, to be enforceable, must meet the requirement of a writing. It is true that parol evidence concerning details which merely explain or clarify the essential terms appearing in the written instrument may be considered. However, the essential elements of the agreement may not be shown by parol.

■ Under points 5 and 6 plaintiff argues that Lockheed presented no evidence, or no admissible evidence, of the existence of any contingency or of the fact that Lockheed made reference checks.

The only written evidence of the agreement is the letter in question. It clearly shows an agreement subject to a contingency. There is no evidence of any other agreement enforceable by the courts. If we disregard the letter, Lockheed's invocation of the statute of frauds would require the denial of plaintiff's claim.

There is sufficient admissible evidence showing that a background investigation was, in fact, made by Lockheed. One of the defendants, Bob Savage, testified in unequivocal terms that he had interviewed several persons who had worked with plaintiff at plaintiff's prior place of employment. He testified as to the information he received from such persons concerning plaintiff's self-motivation, inability to act without constant supervision, lack of leadership qualities and inability to "handle" people. We are not here concerned with the truth of the statements made to Savage by the persons he interviewed. Such statements are clearly admissible as evidence that the background check was made and that the statements themselves were made. Lucas was told of the unfavorable comments concerning plaintiff, and he testified that his decision to withdraw the offer of employment was based on such comments. Again, the truth of the statements is not in issue. The important fact is that the statements, whether true or false, were made, that Lucas was told of such statements, and that the decision not to employ plaintiff was based on the results of the investigation.

Points 7 through 11 assert that the court erred in denying plaintiff's motion to disregard the answer to issue no. 1 and in denying plaintiff's motion for judgment non obstante veredicto.

Plaintiff's contention that Lockheed presented no evidence to support its claim that the reference checks were unsatisfactory rests on a misapprehension concerning the burden of persuasion in this case. Lockheed specifically pleaded the nonoccurrence of the condition precedent. When a promise is subject to a condition precedent, the promisor cannot be held liable until the occurrence of the condition. *Hurst v. Rush,* 514 S.W.2d 472, 475 (Tex.Civ.App.—Beaumont 1974, no writ). It was plaintiff's burden to plead and prove that the condition precedent had been satisfied. *Parkview General Hospital, Inc. v. Eppes,* 447 S.W.2d 487, 490 (Tex.Civ.App.—Corpus Christi 1969, writ ref'd n. r. e.). *See also Modine Manufacturing Co. v. North East Independent School District,* 503 S.W.2d 833, 842–43 (Tex.Civ.App.—Beaumont 1973, writ ref'd n. r. e.).

Lockheed failed to produce Shea as a witness. Plaintiff argues that such failure gave rise to an unrebutted presumption that Shea's testimony would have been unfavorable to Lockheed. This presumption, however, does not arise until the party having the burden of proof has made out a prima facie case. *Turner v. Texas Co.,* 138 Tex. 380, 159 S.W.2d 112, 117 (1942). The "presumption" is in reality no more than an inference which the trier of fact may draw from the absence of a witness. It concerns only the nature of the missing testimony, and it is proper jury argument to point out the absence of the witness and attempt to persuade the jury that his testimony would be of a certain nature. The failure to produce a witness does not constitute conclusive evidence of the existence of a controlling fact.

Plaintiff's complaint that issue no. 1 was misleading and misunderstood by the jury cannot be considered because he failed to object to the form of the issue in the trial court. Tex.R.Civ.P. 274.

The judgment of the trial court is affirmed.