**CENTER FOR MARINE CONSERVATION, et al.**

v.

**Ronald BROWN, et al.**

**TEXAS SHRIMP ASSOCIATION, et al.**

v.

**Ronald BROWN, et al.**

Civ. A. No. G–94–660, G–95–265.

United States District Court,
S.D. Texas,
Galveston Division.

Nov. 16, 1995.

William E. Junell, Jr., Paul M. Bohannon, Andrews & Kurth, Houston, TX, Benjamin

Sharp, Attorney at Law, Donald C. Baur, Attorney at Law, Washington, DC, for Center for Marine Conservation, Daniel Horovitz, Page S. Williams, Dr. Deborah Crouse.

Gaynelle Griffin Jones, Daniel David Hu, U.S. Attorneys Office, Houston, TX, Elizabeth Lambert, Asst. Attorney General, Austin, TX, Christiana P. Perry, James C. Kilbourne, Anthony P. Hoang, U.S. Dept. of Justice, Washington, DC, for Ronald Brown, James Baker, In his capacity as Under Secretary for Oceans and Atmosphere, Rolland A. Schmitten, In his capacity as Assistant Administrator of the National Marine Fisheries Service, Dr. Andrew J. Kemmerer, In his capacity as Director, Southeast Region, National Marine Fisheries Service, Wayne Swingle, In his capacity as Executive Director, Gulf of Mexico Fishery Management Council.

Wesley Blevins, Seadrift, TX, amicus, pro se.

Richard Moore, Dickinson, TX, amicus, pro se.

Terry Ricks, Aransas Pass, TX, amicus, pro se.

Michael K. Bell, Bell & Murphy, Houston, TX, James P. Walsh, Attorney at Law, Washington, DC, for National Fisheries Institute, Texas Shrimp Association.

### ORDER

KENT, District Judge.

Presently before the Court are the Motions of the Center for Marine Conservation (CMC) to Enforce Settlement and for a Preliminary Injunction.[1] For the reasons set forth below, the Motion for Preliminary Injunction is **TEMPORARILY DENIED,** and the Motion to Enforce Settlement is hereby **DENIED.**

## I. BACKGROUND

This case began as action by the CMC (the CMC Action) to force the United States gov-

---

**1.** On July 24, 1995, the CMC also filed a Motion to Dismiss the First Amended Complaint of the Shrimp Industry Plaintiffs. However, because that Motion was stricken on July 31, 1995, for failure to comply with the Local Rules of the Southern District of Texas, this Order does not address the Motion to Dismiss.

ernment (the Federal Defendants) to protect five species of threatened and endangered sea turtles by implementing and enforcing regulations designed to reduce the number of turtles killed as a result of commercial shrimping. The National Fisheries Institute and the Texas Shrimp Association (together, the Shrimp Industry Intervenors or the Intervenors), organizations representing members of the shrimping industry, intervened in the CMC Action. The CMC and the Federal Defendants began settlement discussions, and apparently made significant progress.

However, before a settlement agreement was executed, the Shrimp Industry Intervenors filed a separate action in this Court against the Federal Defendants and one additional defendant (the Shrimpers Action), essentially seeking to enjoin the Federal Defendants from undertaking the activities sought by the CMC in its action. On June 30, 1995, this Court granted the CMC's Motion to intervene in the Shrimpers Action, and consolidated the Shrimpers Action into the CMC Action.

After the Shrimpers Action was filed, the Federal Defendants' view of the settlement negotiations underway with the CMC changed. On June 16, 1995, the Federal Defendants sent to the CMC a proposed settlement agreement, along with a letter stating that settlement would be possible only if the Federal Defendants could simultaneously settle the Shrimpers Action with the Shrimp Industry Intervenors. The CMC took the position that an oral agreement to settle the CMC Action had been reached without any requirement that settlement also be reached in the Shrimpers Action. The Federal Defendants refused to execute a settlement agreement, contending no agreement had been reached by the parties.

## II. MOTION TO ENFORCE SETTLEMENT

■ Before determining whether the CMC and the Federal Defendants entered into a binding and enforceable agreement, the Court must first determine whether state or federal law governs this issue. The fact that this Court has federal question jurisdiction over the action because it involves claims under the Endangered Species Act and other federal statutes does not automatically mean that federal law governs every issue in the litigation. The nature of legal issue, rather than the Court's statutory basis for jurisdiction, determines the choice of law. *Sun Studs, Inc. v. Applied Theory Asocs., Inc.,* 772 F.2d 1557 (Fed.Cir.1985).

■ None of the statutes upon which the CMC's underlying claims are based dictates the requirements for enforceable settlement agreements. If "extensive federal legislation exists but fails to address the specific issue to be decided, 'the pertinent analysis assesses whether there exists a valid and substantial federal interest or policy that requires the application of federal law as an exercise of interstitial lawmaking to protect or effectuate the federal scheme.'" *In re Omni Video, Inc.,* 60 F.3d 230, 232 (5th Cir.1995).[2] If there is no strong federal interest present, state law must be applied. *Id.*

■ Whether a strong federal interest is present in this case is easily answered. As a general rule, federal law governs contracts to which the federal government is a party. *United States v. Seckinger,* 397 U.S. 203, 209–10, 90 S.Ct. 880, 884–85, 25 L.Ed.2d 224 (1969) (interpretation of contract entered into by the United States pursuant to authority conferred by federal statute is governed by federal law); *United States v. County of Allegheny,* 322 U.S. 174, 183, 64 S.Ct. 908, 914, 88 L.Ed. 1209 (1944) ("the validity and construction of contracts through which the United States is exercising its constitutional functions ... present questions of federal law"); *see also O'Neill v. United States,* 50

---

2. In *Omni Video,* the Fifth Circuit applied this analysis to conclude that there is no strong federal interest in the issue of the validity of settlements to resolve bankruptcy disputes; thus, the validity of the settlement must be determined by state law. However, in *Mid–South Towing Co. v. Har–Win, Inc.,* 733 F.2d 386 (5th Cir.1984), without explicitly engaging in the analysis set forth in *Omni Video,* the Fifth Circuit held that when the substantive rights and liabilities involved in the litigation derive from federal law, questions regarding the enforceability or validity of settlement agreements are governed by federal law. 733 F.2d at 389; *see also Borne v. A & P Boat Rentals No. 4, Inc.,* 780 F.2d 1254, 1256 (5th Cir.1986).

F.3d 677 (9th Cir.1995); *Falls Riverway Realty, Inc. v. City of Niagara Falls,* 754 F.2d 49, 55, n. 4 (2nd Cir.1985); *Smith v. United States,* 497 F.2d 500 (5th Cir.1974). Thus, the question of whether the parties entered into an enforceable oral contract is governed by federal law.

■■■ However, controversies governed by federal law do not inevitably require resort to uniform federal rules. *United States v. Kimbell Foods, Inc.,* 440 U.S. 715, 727, 99 S.Ct. 1448, 1457, 59 L.Ed.2d 711 (1979). Depending on the circumstances of the case, a court may either fashion a uniform federal rule, or absorb state law as the rule of decision. As will be discussed below, under black-letter principles of contract law, the settlement contract presently before the Court is unenforceable, and would be unenforceable whether this Court looked to state or federal common law as governing the dispute.[3] Therefore, the Court does not decide whether this case requires the application of uniform federal common law or the absorption of state law.

■■■ A settlement agreement is simply a particular type of contract. *E.g., Guidry v. Halliburton Geophysical Servs., Inc.,* 976 F.2d 938, 940 (5th Cir.1992). Therefore, in order to enforce the agreement, the CMC must establish a meeting of the minds—that is, that the CMC and Federal Defendants intended to and actually reached an agreement to settle the CMC Action. *See Williford Energy Co. v. Submergible Cable Servs., Inc.,* 895 S.W.2d 379 (Tex.Ct.App.—Amarillo 1994, no writ) (meeting of the minds is essential prerequisite to any contract); *Sims v.*

*Westminister Investing Corp.,* 648 A.2d 940 (D.C.1994) (enforceable contract requires an agreement as to all material terms, and intention of the parties to be bound).

In support of its argument that an oral agreement to settle was reached, the CMC relies on a letter (the Schmitten Letter) to the CMC from one of the Federal Defendants, Rolland Schmitten, the Assistant Administrator of the National Marine Fisheries Service (NMFS). In relevant part, the Schmitten Letter provides:

> With respect to settlement discussions, as stated in my letter to you dated April 25, 1995, NMFS had been prepared to settle the [CMC Action] on the terms expressed in that letter. Although we agreed in conceptual terms during our meeting April 27, CMC rejected the specific language proposed by NMFS at that time. Since then, however, several developments have occurred that have delayed our efforts to settle with CMC. Most importantly, [the Shrimp Industry Intervenors] filed suit against NMFS.... [N]evertheless, the agency still believes that settlement is possible on the terms described below.
>
> NMFS' view of the situation dictates that any settlement between NMFS and CMC must occur concurrently with a settlement between NMFS and [the Shrimp Industry Intervenors]....
>
> ....
>
> Attached to this letter is a draft settlement agreement that incorporates changes to paragraph 5 and order of dismissal as a result of our meeting on April 27. Howev-

---

**3.** The Intervenors urge the application of Texas law, which, subject to certain limited exceptions, requires a settlement agreement to be written, signed by the parties, and filed as part of the record before it can be enforced. *See* Tex. R.Civ.P. 11; *Kennedy v. Hyde,* 682 S.W.2d 525 (Tex.1984); *Coke v. Coke,* 802 S.W.2d 270, 277 (Tex.App.—Dallas 1990, writ denied). However, even if this Court were to conclude that state law should adopted as the rule of decision, it is not certain that Texas law would be adopted. The evidence before the Court shows that the settlement negotiations between the CMC and the Federal Defendants took place in Washington, D.C. Thus, it may be that the District of Columbia has the most significant relationship to the settlement agreement, and that the laws of the

District would be the most appropriate to determine the question of the enforceability of the settlement. The law of the District of Columbia does not require that settlement agreements be in writing. *Sims v. Westminster Investing Corp.,* 648 A.2d 940 (D.C.1994). Likewise, federal law apparently does not require settlement agreements to be in writing. *See Brock v. Scheuner Corp.,* 841 F.2d 151 (6th Cir.1988); *Mid–South Towing Co. v. Har–Win, Inc.,* 733 F.2d 386 (5th Cir.1984); *Casey v. Illinois Central Gulf R. Co.,* 687 F.Supp. 1112 (W.D.Ky.1988); *Thompson v. Continental Emsco Co.,* 629 F.Supp. 1160 (S.D.Tex.1986). However, because the Court finds any settlement agreement unenforceable on other grounds, the Court does not decide whether a signed writing is required in this case.

er, NMFS is not prepared to agree to settlement until it has some assurance from [the Shrimp Industry Intervenors] that they will also settle their lawsuit.

■ Contrary to the CMC's assertions, the Schmitten Letter does not establish that the parties reached an enforceable oral settlement agreement. The Schmitten Letter establishes that the parties on April 27 agreed "in conceptual terms" to settlement. However, nothing before this Court reveals what the conceptual terms were upon which the parties apparently agreed. Therefore, based upon the evidence before the Court, any conceptual agreement between the parties is too vague and uncertain to be enforceable. *See Restatement (Second) of Contracts* § 33(1) ("Even though a manifestation of intention is intended to be understood as an offer, it cannot be accepted so as to form a contract unless the terms of the contract are reasonably certain); *T.O. Stanley Boot Co. v. Bank of El Paso,* 847 S.W.2d 218 (Tex.1992) (to be legally binding, contract must be sufficiently definite in its terms so that court can determine the obligations undertaken by the promisor); *Rosenthal v. National Produce Co.,* 573 A.2d 365 (D.C.1990) (a contract must be sufficiently definite as to its material terms so that the promises and performance to be rendered by each party are reasonably certain).

■ To the extent a specific offer of settlement was made by the NMFS at the April 27 meeting, the Schmitten Letter establishes the CMC rejected that offer. The CMC argues the disagreement between the parties was over "technical issues regarding the language of the agreement." (CMC's Reply to Federal Defendant's Opposition to Motion to Enforce Settlement, p. 2). However, the CMC has not identified the technical issues over which the parties disagreed, and thus has presented no evidence from which this Court could conclude the areas over which the parties disagreed were not material to the agreement. *T.O. Stanley,* 847 S.W.2d at 221 (material terms must be agreed upon before court can enforce a contract). Therefore, this Court must treat CMC's rejection as terminating any enforceable offer of settlement. *Harris v. Mickel,* 15 F.3d 428 (5th Cir.1994) (once offer is rejected, the offer is terminated and cannot be reaccepted); *Legal Security Life Ins. Co. v. Ward,* 373 S.W.2d 693 (Tex.Civ.App.—Austin 1963) (rejection terminates offer, and offer thereafter cannot be revived by tendering acceptance); *Tracy v. Disman,* 137 A.2d 217 (D.C.1957) (rejection of offer end the negotiations, unless the offeror renews his offer); *Restatement (Second) of Contracts* § 36 (offeree's power of acceptance is terminated by rejection of offer); *id.* § 35(2) (a contract cannot be created by acceptance of an offer after the power of acceptance has been terminated).

■ The CMC further contends the draft settlement attached to the Schmitten Letter represents the terms to which the parties had agreed to settle. Again, the CMC offers this Court no evidence establishing that the draft settlement embodied the terms of any oral agreement reached prior to the date of the Schmitten Letter. Instead, the only evidence before the Court demonstrates that the draft settlement was a new settlement proposal offered by the NMFS after the CMC rejected its previous offer.

■ As discussed above, the CMC has not established the existence of a sufficiently certain oral agreement to settle, and the CMC rejected the NMFS's April settlement offer. Thus, the Schmitten Letter and the draft settlement *together* comprised the only existing settlement offer that could be accepted by the CMC. The Schmitten Letter's requirement that settlement with the CMC was conditioned upon settlement with the Shrimp Industry Intervenors was a condition precedent to consummation of any settlement with the CMC. *See Valley Ranch Dev. Co. v. FDIC,* 960 F.2d 550 (5th Cir.1992) (where defendant stated that settlement was contingent on approval of the agreement by the FDIC, FDIC approval became a condition precedent); *Bair v. Voelker Realty Co.,* 589 S.W.2d 867 (Tex.Civ.App.—Dallas 1979) (condition precedent is an event that must happen before a right to enforce an obligation can accrue); *Bergman v. Parker,* 216 A.2d 581 (D.C.1966) (condition precedent is a fact, other than passage of time, which must exist before duty of immediate performance can arise). While the CMC may completely

agree with all the terms contained in the draft settlement, it cannot accept the draft settlement but reject the condition precedent contained in Schmitten Letter. *E.g., Gilbert v. Pettiette,* 838 S.W.2d 890 (Tex.Ct.App.— Houston 1992) (if acceptance changes terms of the offer, the offer is rejected); *Disman,* 137 A.2d at 218 (acceptance upon terms varying from those offered is a rejection of the offer).

Therefore, if CMC accepted the Federal Defendants' settlement offer, it could have accepted the offer only on the condition that the settlement would not be finalized unless the Shrimp Industry Intervenors agreed to settle their action. Under this analysis, the CMC's Motion to Enforce Settlement fails as a matter of law, because there is no settlement agreement between the CMC and the Federal Defendants unless and until the Intervenors also agree to settle. *Baker v. Lockheed Aircraft Serv. Co.,* 584 S.W.2d 369 (Tex.Civ.App.1979, writ ref. n.r.e.) (when a promise is subject to a condition precedent, a promisor cannot be held liable until occurrence of the condition); *accord Bergman v. Parker,* 216 A.2d 581 (D.C.1966). Alternatively, the CMC did not effectively accept the Federal Defendants' settlement offer because it refused to accept the requirement that settlement was contingent on the actions of the Intervenors. Under this analysis, the CMC's Motion to Enforce Settlement likewise fails as a matter of law, because no settlement agreement was ever reached.

Accordingly, because the CMC has not established that an enforceable agreement to settle the CMC Action was reached with the Federal Defendants, the CMC's Motion to Enforce Settlement is hereby DENIED.

### III. PRELIMINARY INJUNCTION

On July 31, 1995, the CMC filed its Motion for Preliminary Injunction, seeking to require the Federal Defendants, through the NMFS, to take immediate steps to protect sea turtles, including the implementation of certain emergency gear restrictions, increased enforcement of existing regulations to ensure compliance, and revisions to the NMFS's emergency response plan. Pursuant to Local Rule 6, the CMC has requested a hearing on its Motion.

During in camera discussions on August 1, 1995, this Court directed all parties to suspend further action in these cases until the status conference scheduled in October. Consequently, while the Intervenors have put the Court on notice of their opposition to the CMC's Motion, neither the Federal Defendants nor the Intervenors have responded to the Motion for Preliminary Injunction.

At the status conference held on October 20, 1995, the Court established deadlines for the filing of dispositive motions, responses, and amicus briefs, and indicated that the Court would rule on the dispositive motions by February 16, before the start of the 1996 shrimping season in the Gulf of Mexico. Because the Court's previous directives have prevented responses to the Motion for Preliminary Injunction, the Court concludes it would be improper to rule on the Motion at this juncture. To rule on the Motion on the present record would be unfair to the Federal Defendants and the Shrimp Industry Intervenors. Moreover, the Court is not inclined to engage in piecemeal, interlocutory resolution of this case when the case may be finally resolved in a matter of months. Accordingly, the CMC's Motion for Preliminary Injunction is hereby **TEMPORARILY DENIED.**

However, should the CMC believe that a Preliminary Injunction is still necessary in view of the schedule established at the status conference, the CMC shall file an Amended Motion for Preliminary Injunction, and the Federal Defendants and other parties shall respond to such Amended Motion, in accordance with the schedule established at the status conference. To ensure that any decision by this Court is based on complete information, the Amended Motion shall contain the most current data available concerning sea turtle mortalities, as well as the current status of any actions being taken by the Federal Defendants related to the subject matter of the cases before the Court.

IT IS SO ORDERED.