Oswaldo HENRIQUEZ, Appellant,

v.

CEMEX MANAGEMENT, INC., Appellee.

No. 01–04–00576–CV.

Court of Appeals of Texas, Houston (1st Dist.).

March 3, 2005.

---

Andres P. Chaumont, Law office of Andres Chaumont, Houston, for Appellant.

J. Bradley Green, Sandra T. Krider, David George, Edwards & George, LLP, Houston, for Appellee.

Panel consists of Justices NUCHIA, JENNINGS, and ALCALA.

## OPINION

TERRY JENNINGS, Justice.

Appellant, Oswaldo Henriquez, challenges the trial court's rendition of summary judgment against him on his claims for wrongful breach of employment contract, defamation, and business disparagement brought against his former employer, appellee, Cemex Management, Inc. ("Cemex"). In a single issue, Henriquez contends that the trial court erred in granting Cemex's motion for summary judgment[1] and dismissing his claims with prejudice. We affirm.

### Factual and Procedural Background

In his petition, Henriquez alleges that, in the first half of 2001, he entered into an employment contract with Cemex to serve as Cemex's procurement director in Houston, Texas.[2] Henriquez further alleges that his employment with Cemex was to begin on September 1, 2001,[3] that the agreed period of employment "was for a minimum of three years," and that he was to receive as compensation an "agreed pay rate of $285,000 per year, with additional elements of compensation including such items as: variable compensation, car allowance, annual lump sum bonus, paid vacation and retirement benefits." Henriquez testified that "a term of three years ... was negotiated as the minimum that I would accept in the new position, given that taking the job, I would have to uproot my entire family, rent or sell my house in Venezuela, and rent or buy another one in Houston."

After accepting the position with Cemex in Houston, Henriquez and his family moved to Houston from Venezuela. According to Henriquez's testimony, on the morning of December 2, 2002, Andy Miller, vice president of human resources of Cemex, and Alfonso Caballero, corporate vice president of procurement for Cemex, came to Henriquez's office and terminated his employment. Henriquez testified that he was fired because representatives of Cemex believed that he had stolen money from Cemex by taking money under the table from two of Cemex's vendors, Roland Sped Caribe ("Roland Sped") and IFS, Inc. ("IFS").

Henriquez filed suit on February 7, 2003. On November 10, 2003, Henriquez filed his third amended original petition, asserting claims for wrongful breach of employment contract, defamation, and business disparagement.[4] On March 3, 2004, Cemex filed its summary judgment motion, seeking dismissal of Henriquez's claims. Cemex asserted that Henriquez's breach of contract claim was precluded

---

1. *See* TEX.R. CIV. P. 166a(c).

2. Prior to accepting this position, Henriquez served as procurement director for Cemex Venezuela, a related Cemex entity located in Caracas, Venezuela. In order to distinguish between the Cemex entities, the parties occasionally refer to Cemex Management, Inc. as "Cemex USA."

3. Contrary to his pleadings, Henriquez testified in his deposition that he entered into an

employment contract with Cemex on February 1, 2002 for a minimum of three years.

4. Henriquez has failed to support the overwhelming majority of the factual statements contained in his brief with specific references to the record. TEX.R.APP. P. 38.1(f), (h). This Court is not required to search the entire record for evidence supporting Henriquez's claims.

because Henriquez did not have an employment contract with Cemex that satisfied the statute of frauds. Cemex further asserted that Henriquez defamation claim was precluded because the alleged defamatory statements were either not capable of a defamatory meaning or were subject to the qualified privilege of an employer to investigate employee wrongdoing. Finally, Cemex asserted that Henriquez's business disparagement claim was precluded because the alleged disparaging statements did not concern Henriquez's economic interests and because Henriquez had not suffered any special damages as a result of the disparaging statements.

Henriquez filed a response to Cemex's summary judgment motion, contending that certain written documents satisfied the statute of frauds. Henriquez also contended that Cemex had made defamatory statements that were not covered by a qualified privilege or that any applicable qualified privilege was destroyed because Cemex had made such statements with actual malice. Henriquez did not specifically address Cemex's arguments concerning his business disparagement claim. Cemex filed a reply in support of its motion and also filed objections to the affidavit testimony of Henriquez. The trial court held a hearing and granted Cemex's summary judgment motion and dismissed each of Henriquez's claims against Cemex with prejudice.[5]

In regard to his breach of contract claim, Henriquez concedes that there is no specific document titled "Employment Agreement" or "Employment Contract" between Cemex and Henriquez. Rather, Henriquez asserts that there "was an entire set of documents, of an official nature, submitted by [Cemex] to the United States Department of Justice, Immigration Section, detailing in full, in writing, the terms of the employment offered and accepted by the parties." Henriquez further alleges that the terms contained in the documentation submitted to the INS were later ratified in letters provided to him by Cemex.

Specifically, Henriquez relies on the following documents to support his claim for wrongful breach of employment contract: (1) a July 17, 2001 letter submitted by Gilberto Perez of Cemex to the Immigration and Naturalization Service ("INS") as part of Henriquez's L–1A visa application, stating that Cemex "would like Mr. Henriquez to work in L–1A status as a director of procurement for a period of three years," that Cemex "would like to employ Mr. Henriquez for the next three years," and that Cemex had offered Henriquez an annual salary of $100,000; (2) a July 25, 2001 letter submitted by Cemex's lawyer to the INS in conjunction with Mr. Henriquez's visa application, which states that Cemex "would like Mr. Henriquez to work in L–1A status as a Director of Procurement for a period of three years"; (3) a L–1A visa application form signed and submitted in July 2001 by Gilberto Perez of Cemex and Cemex's lawyer stating that the dates of Henriquez's "intended employment" were August 1, 2001 through August 1, 2004 and that Henriquez's salary would be $100,000 per year; (4) a February 26, 2002 letter from Thomas Robinson ("Robinson"), manager of compensation for Cemex, addressed to "To Whom it May Concern," stating that Henriquez was employed with Cemex, that Henriquez's annual gross salary was $137,753.03, that Henriquez's "assignment is expected to last approximately three years or longer,"

---

**5.** Contemporaneously with filing its summary judgment motion, Cemex filed a "no-evidence" summary judgment motion regarding Henriquez's defamation and business disparagement claims. *See* Tex.R. Civ. P. 166a(i). The trial court did not rule on that motion.

and that Henriquez was entitled to receive additional compensation through various bonuses; (5) a May 7, 2002 letter from Robinson addressed to "To Whom it May Concern," stating that Henriquez was employed with Cemex, that Henriquez's annual gross salary was $143,346.03, that Henriquez's "assignment is expected to last approximately three years or longer," and that Henriquez was entitled to receive additional benefits and compensation in the form of variable compensation, a car allowance, and an annual bonus; and (6) a provision in Cemex's International Mobility Policy for Executives titled "Lump-sum Bonus," which generally provided that bonuses were to be paid according to the length of time the executive stayed in the United States. In addition to this documentation, Henriquez also asserts that Gilberto Perez told him he would be employed at Cemex for three or more years.

In regard to his defamation and business disparagement claims, Henriquez asserts that Cemex, acting through its authorized officers, agents and employees, disseminated and wrongfully published certain incorrect facts about him to Roland Sped and its owner, Alfredo Tauszky, and to IFS and its owner, Ramon Montesano. Henriquez further asserts that Cemex made defamatory statements about him in Houston and abroad, and that such statements "were false and were made with actual knowledge that they were probably false or, alternatively, with a significant level of negligence as to the accuracy of the contents of the representations made." Henriquez alleges that these statements accuse him of unlawful acts, including the receipt or attempted receipt of unmerited and unapproved commissions in excess of one million dollars.

In his deposition testimony, Henriquez specifically identified the following seven instances in which Cemex allegedly defamed him: (1) a September 2002 meeting between Tauszky of Roland Sped and Francisco Perez, Jaime Elizondo, and Eduardo Horowitz of Cemex Venezuela and Alfonso Caballero of Cemex Mexico during which these Cemex representatives told Tauszky that Henriquez had taken money from Cemex and that they believed Henriquez had also used his influence in helping Tauszky obtain business for Roland Sped; (2) a meeting in or about September 2002 between Francisco Perez of Cemex Venezuela and Ramon Montesano of IFS during which Montesano was told that Cemex had "found quite a few irregular things and that they needed him to cooperate" and that someone at Cemex was being investigated in regard to the relationship between Cemex and IFS and Roland Sped; (3) a meeting or meetings called by Francisco Perez of Cemex Venezuela in which he told Cemex Venezuela employees that Henriquez had been fired because he had "irregular business with suppliers and vendors"; (4) a meeting between P.R. Talluri and Maria Christina Gonzalez, both former Cemex employees at the time the meeting occurred, during which Talluri told Gonzalez that he had heard that Henriquez had been fired from Cemex because he took money from vendors; (5) a conversation between Cezar Cruz and Tony Espinosa, both of Cemex, in which Cruz told Espinosa that Henriquez was going to be fired; (6) a statement made by Espinosa to Alex Calbrella and Marco Jerez, both of whom were Cemex employees traveling with Espinosa shortly before Henriquez was fired, that they should not talk to Henriquez because he was going to be fired; and (7) a statement by Francisco Salinas of Cemex to Ricardo Lobo of Cemex that "bad things" were being said about Henriquez.

## Standard of Review

 A party moving for summary judgment has the burden of proving that there is no genuine issue of material fact

and that the movant is entitled to judgment as a matter of law. TEX.R. CIV. P. 166(c); *Nixon v. Mr. Prop. Mgmt.*, 690 S.W.2d 546, 548 (Tex.1985); *Farah v. Mafrige & Kormanik*, 927 S.W.2d 663, 670 (Tex.App.-Houston [1st Dist.] 1996, no writ). When deciding whether there is a disputed, material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true. *Nixon*, 690 S.W.2d at 548–49. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor. *Id.* at 549. When a defendant moves for summary judgment, it must either (1) disprove at least one element of the plaintiff's cause of action or (2) plead and conclusively establish each essential element of its affirmative defense, thereby defeating the plaintiff's cause of action. *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995); *Farah*, 927 S.W.2d at 670.

■■■ Here, the summary judgment order did not specify the grounds upon which the trial court relied. On appeal, Henriquez, as the non-movant, is required to show that each summary judgment ground alleged was insufficient to support summary judgment. *Star–Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex.1995). Accordingly, we will affirm the trial court's summary judgment order if any of the grounds presented in the supporting motion was meritorious. *Harwell v. State Farm Mut. Auto. Ins. Co.*, 896 S.W.2d 170, 173 (Tex.1995); *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex.1989).

### Wrongful Breach of Employment Contract

■■ "Texas follows the doctrine of employment at will, under which employment for an indefinite term may be terminated at will and without cause." *Schroeder v. Tex. Iron Works, Inc.*, 813 S.W.2d 483, 489 (Tex.1991). Absent a specific contractual term to the contrary, this doctrine permits an employer to fire an employee without liability. *Id.; Massey v. Houston Baptist Univ.*, 902 S.W.2d 81, 83 (Tex.App.-Houston [1st Dist.] 1995, writ denied).[6] Cemex argues that the trial court properly granted its motion for summary judgment on Henriquez's breach of contract claim because Henriquez did not have a valid employment contract with Cemex that satisfied the statute of frauds.

■■■ The statute of frauds provides, in pertinent part:

(a) A promise or agreement described in Subsection (b) of this section is not enforceable unless the promise or agreement, or a memorandum of it, is

(1) in writing; and

(2) signed by the person to be charged with the promise or agreement or by someone lawfully authorized to sign for him.

(b) Subsection (a) of this section applies to:

. . .

(6) an agreement which is not to be performed within one year from the date of making the agreement.

TEX. BUS. & COM.CODE ANN. § 26.01 (Vernon 2002). Because Henriquez contends that he entered into an employment contract with Cemex for a minimum term of three years, his employment agreement was not

---

6. The essential elements in a suit for breach of contract are (1) that there is a valid contract; (2) that the plaintiff performed or tendered performance; (3) that the defendant breached the contract; and (4) that the plaintiff was damaged as a result of the breach. *Hussong v. Schwan's Sales Enterp., Inc.*, 896 S.W.2d 320, 326 (Tex.App.-Houston [1st Dist.] 1995, no writ).

capable of being performed within one year from the date of making the agreement, and thus falls within the statute of frauds. *Id.; Schroeder,* 813 S.W.2d at 489; *Cruikshank v. Consumer Direct Mortgage, Inc.,* 138 S.W.3d 497, 501 (Tex.App.-Houston [14th Dist.] 2004, pet. filed). Thus, in order to succeed on his claim for wrongful breach of employment contract, Henriquez must show that he had an employment contract with Cemex that specifically provided that Cemex did not have the right to terminate his employment at will and (2) Cemex's promise or agreement to employ Henriquez, or a memorandum of it, was in writing and signed by Cemex. TEX. BUS. & COM.CODE ANN. § 26.01 (Vernon 2002); *Cruikshank,* 138 S.W.3d at 501. Furthermore, he must show that a writing was complete within itself in every material detail and contained all essential elements so that the contract could be ascertained without resort to oral testimony. *Cohen v. McCutchin,* 565 S.W.2d 230, 232 (Tex. 1978); *Collins v. Allied Pharmacy Mgmt., Inc.,* 871 S.W.2d 929, 933 (Tex.App.-Houston [14th Dist.] 1994, no writ). However, the writing requirement under the statute of frauds may be satisfied by two or more documents. *Padilla v. LaFrance,* 907 S.W.2d 454, 460 (Tex.1995). Additionally, "a valid memoranda of the contract may consist of letters and telegrams signed by the party to be charged and addressed to his agent or the other party to the contract, or even to a third party not connected with the transaction." *Adams v. Abbott,* 151 Tex. 601, 254 S.W.2d 78, 80 (1952); *see also Key v. Pierce,* 8 S.W.3d 704, 708 (Tex.App.-Fort Worth 1999, pet. denied); *EP Operating Co. v. MJC Energy Co.,* 883 S.W.2d 263, 267 (Tex.App.-Corpus Christi 1994, writ denied).

▮ The documents on which Henriquez relies in his attempt to satisfy the statute of frauds can be divided into two categories. The first category of documents relates to the submission of Henriquez's visa application to the INS (the "INS documents").[7] Henriquez contends that these documents detailed in full the terms of his employment contract with Cemex. However, these documents were deficient in several respects. First, these documents did not contain language sufficient to create an employment relationship between Henriquez and Cemex for a definite term of three years. The letters submitted to the INS merely stated that Cemex "would like Mr. Henriquez to work ... for a period of three years" and that Cemex "would like to employ Mr. Henriquez for the next three years." The letters to the INS did not state that Henriquez "will" be employed for a period of three years upon approval of his visa application. The visa application form merely stated the dates of Henriquez's "intended employment." Second, the INS documents did not supply a consistent and accurate term of employment, and thus do not support Henriquez's claim that Cemex was required to employ him for a three-year period beginning September 1, 2001, the date identified in his petition, or February 1, 2002, the date identified in his deposition testimony. Third, the INS documents did not accurately reflect the salary term, which Henriquez maintains he specifically negotiated prior to entering into the employment contract with Cemex. In the July 17, 2001 letter, Cemex stated that Henriquez's salary was $100,000 per year. The other INS documents did not contain any information on Henriquez's

---

7. The letters to the INS and the visa application form were actually submitted to the INS well over six months before the date on which Henriquez testified that he entered into his employment contract with Cemex.

salary or the other material terms of his employment.

In his deposition testimony, Henriquez conceded that he did not negotiate any terms contained in the INS documents and that many of the terms contained in the INS documents were not the terms on which he was suing. As stated in his petition, Henriquez's claim for breach of employment contract was based on the contention that he entered into an employment contract with Cemex for a period of three years beginning on September 1, 2001 at an annual salary of $285,000 plus additional compensation. The INS documents did not support this contention. The INS documents were not complete within themselves and did not contain every material detail and essential element of Henriquez's alleged employment contract with Cemex and thus, as a matter of law, did not satisfy the statute of frauds.[8]

 The second group of documents on which Henriquez relies consists of two letters dated February 16, 2002 and May 7, 2002 from Cemex and addressed to "To Whom it May Concern." Henriquez concedes that both of these letters, which are dated after the date on which Henriquez began employment with Cemex, were provided to him by Robinson, Cemex's compensation manager, for the benefit of his creditors. However, Henriquez states that he also requested the first letter in order to determine his "benefits and payments." Henriquez contends that these letters ratified the terms of employment stated in the INS documents, and that these letters confirm Henriquez's salary, bonus, car allowance, and, "most clearly, the *expectations* of the parties as to the terms of the employment contract." However, like the INS documents, these letters were deficient in several respects. They merely stated that Henriquez's employment was "expected to last approximately three years." More importantly, these letters stated inconsistent salary terms that were materially different from the salary that Henriquez contends he specifically negotiated, even though the letters were provided after Henriquez began his employment and after Henriquez testified that he was receiving the negotiated salary.[9] Because Henriquez's salary was a material term to his employment contract with Cemex and because these letters did not contain this and other material terms, these letters did not satisfy the statute of frauds. *See Conner v. Lavaca Hosp. Dist.*, 267 F.3d 426, 433 (5th Cir.2001) (stating, "Generally, duration, compensation, and the employee's

---

8. Additionally, we note that it would be problematic to construe documents submitted by an employer in conjunction with an employee's visa application as a writing sufficient to satisfy the statute of frauds. It does not necessarily follow that because an employer supplies "dates of intended employment" on a visa application form, that the employer has "contracted" to employ the employee for the period of time stated in the application. *See Arboireau v. Adidas-Salomon AG*, 347 F.3d 1158, 1166 (9th Cir.2003). The court in *Arboireau* refused to find that statements on a visa application evidenced the parties' intent for a three-year employment contract, in part, because it is "standard practice for immigration visas to state three-year employment to avoid annual paperwork." *Id.* The *Arboireau* court also noted that the visa application before it did not provide the employer the opportunity to designate whether employment was at will or had a specific term. *Id.* The court concluded that, even if the employer "intended, expected, or anticipated" that the employee would work for three years, the employer would not be committed to a three-year term employment contract. *Id.*

9. Henriquez testified that the first piece of paper that accurately reflected his income was his first paycheck, which he received in March 2002. Henriquez does not contend that this paycheck was part of an employment contract, or that the paycheck evidenced a minimum three-year employment term.

duties are essential elements of an employment contract"); *Farrar v. Colo. Indep. Sch. Dist.*, 444 S.W.2d 204, 206–07 (Tex. Civ.App.-Eastland 1969, writ ref'd n.r.e.) (finding that writing did not satisfy statute of frauds because it did not "set out in detail the full provisions and terms of a contract of employment including such matters as the amount of ... compensation, the duties to be performed, the working hours and conditions and numerous other matters common to employment contracts").

 Finally, Henriquez points us to a provision in Cemex's International Mobility Policy for Executives that provided for a reduction of lump sum bonuses for executives based on the length of time that the executive remained in the United States. Generally, employee handbooks and policy manuals do not create implied contracts that modify the at-will-employment relationship. *See, e.g., Vallone v. Agip Petroleum Co., Inc.*, 705 S.W.2d 757, 759 (Tex.App.-Houston [1st Dist.] 1986, writ ref'd n.r.e.). Here, the provision of the policy cited by Henriquez did not contain the material details and the essential elements of his employment agreement with Cemex, and thus the policy did not provide a writing that satisfied the statute of frauds.

 We note that Henriquez did testify that he was orally promised a three-year employment period with Cemex at a certain salary and that he specifically negotiated this term before he and his family agreed to move to the United States. However, this court cannot resort to oral testimony to cure the deficiencies in the writings. *Baker v. Lockheed Aircraft Serv. Co.*, 584 S.W.2d 369, 372 (Tex.Civ. App.-San Antonio 1979, writ ref'd n.r.e.). While Henriquez correctly notes that the writing requirement under the statute of frauds may be satisfied by two or more documents, even when the INS documents, the "To Whom it May Concern" letters, and the provision in the employee policy are taken together, it is impossible to determine the material details and essential elements of Henriquez's employment agreement with Cemex, including but not limited to Henriquez's specific term of employment and Henriquez's salary. If we accepted Henriquez's argument, this court would be required first to treat the writings on which he relies as sufficient to satisfy the statute of frauds and then to disregard the contents of those writings and to enforce an oral agreement differing in material and essential respects from the cited documents. Because it would be necessary to resort to oral testimony to complete the material terms of the contract, we hold that the documents cited by Henriquez did not, as a matter of law, satisfy the statue of frauds. Furthermore, because the summary judgment evidence reveals that Henriquez did not have a valid employment contract with Cemex that satisfied the statute of frauds, we hold that the trial court did not err in granting summary judgment on his claim for wrongful breach of employment contract. *Cohen*, 565 S.W.2d at 232; *Dobson v. Metro Label Corp.*, 786 S.W.2d 63, 66 (Tex. App.-Dallas 1990, no writ); *Baker*, 584 S.W.2d at 372.

### Defamation

 In order to prevail on his defamation claim, Henriquez must, at a minimum, establish that (1) Cemex published a statement of facts, (2) the statement referred to Henriquez, (3) the statement was defamatory, and (4) Cemex acted with negligence regarding the truth of the published statements. *WFAA–TV v. McLemore*, 978 S.W.2d 568, 571 (Tex.1998); *Cruikshank*, 138 S.W.3d at 502. Cemex contends that the trial court properly

granted its motion for summary judgment on Henriquez's defamation claim because the alleged defamatory statements made by Cemex were either not capable of a defamatory meaning or were subject to the qualified privilege of an employer investigating employee wrongdoing, and thus Henriquez's defamation claim fails as a matter of law.

Whether a statement is reasonably capable of defamatory meaning is a question of law to be determined by the court. *Turner v. KTRK Television, Inc.,* 38 S.W.3d 103, 114 (Tex.2000); *Musser v. Smith Protective Serv., Inc.,* 723 S.W.2d 653, 654–55 (Tex.1987); *Einhorn v. LaChance,* 823 S.W.2d 405, 410 (Tex.App–Houston [1st Dist.] 1992, writ dism'd w.o.j.). For a statement to be actionable as defamatory, the plaintiff must establish that the statement referred to the plaintiff. *Newspapers, Inc. v. Matthews,* 161 Tex. 284, 339 S.W.2d 890, 893 (1960); *Delta Air Lines, Inc. v. Norris,* 949 S.W.2d 422, 427 (Tex.App.-Waco 1997, writ denied). A plaintiff is referred to in a defamatory statement if he is named in the statement or if those who know the plaintiff would understand that the statement was referring to the plaintiff. *Matthews,* 339 S.W.2d at 893; *American Broadcasting Cos. v. Gill,* 6 S.W.3d 19, 34 (Tex.App.-San Antonio 1999, pet. denied). A statement is defamatory if the words tend to injure a person's reputation, exposing the person to public hatred, contempt, ridicule, or financial injury. *Austin v. Inet Technologies, Inc.,* 118 S.W.3d 491, 496 (Tex.App.-Dallas 2003, no pet.); *Einhorn,* 823 S.W.2d at 410–11.

In determining if a statement is defamatory, we must construe the statements as a whole, in light of surrounding circumstances and based upon how a person of ordinary intelligence would perceive the entire statement. *Carr v. Brasher,* 776 S.W.2d 567, 570 (Tex.1989); *Delta Air Lines,* 949 S.W.2d at 426; *Einhorn,* 823 S.W.2d at 411. Because the issue of defamatory meaning is a question of law, a jury should be permitted to determine a statement's meaning and the statement's effect on the ordinary person only when the court determines the language to be "ambiguous or of doubtful import." *Einhorn,* 823 S.W.2d at 411.

Here, the statement made to Ramon Montesano of IFS—that "someone" at Cemex was being investigated with regard to their relationships with IFS and Roland Sped—did not sufficiently identify Henriquez to be capable of defamatory meaning.[10] Similarly, Francisco Salinas's alleged statement that "bad things" were being said about Henriquez and Cruz's alleged statement to Espinosa and Espinosa's subsequent statements to Calbrella and Jerez that Henriquez was going to be fired were not sufficiently specific to be defamatory. *Id.* (finding statement that employee was fired for reasons relating "solely to work performance" was nonspecific and was not capable of defamatory meaning). According to Henriquez's own testimony, these statements did not contain specific reasons as to why Henriquez was being fired. Thus, they cannot be considered defamatory as a matter of law. *Id.*

Cemex contends that the other alleged defamatory statements were subject to the defense of qualified privilege. "An employer has a conditional or qualified privilege that attaches to communications made in the course of an investigation

---

**10.** This conclusion is supported by the testimony of Montesano, who agreed that he only learned of the allegations by Cemex against Henriquez when Henriquez visited him in or about June 2003, well after the alleged defamatory statements were made to him.

following a report of employee wrongdoing." *Randall's Food Mkts., Inc. v. Johnson,* 891 S.W.2d 640, 646 (Tex.1995). "This privilege remains intact as long as communications pass only to persons having an interest or duty in the matter to which the communications relate." *Id.* A court determines, as a matter of law, whether a privilege exists. *Calhoun v. Chase Manhattan Bank (U.S.A.) N.A.,* 911 S.W.2d 403, 408 (Tex.App.-Houston [1st Dist.] 1995, no writ). Communications that pass beyond those with an interest or duty in the subject matter are not privileged. *Randall's Food Mkts., Inc.,* 891 S.W.2d at 646. However, communications between company principals and employees, including communications concerning the termination of an employee, have been held to be protected by this privilege. *Id.; Austin,* 118 S.W.3d at 497; *Welch v. Doss Aviation, Inc.,* 978 S.W.2d 215, 224 (Tex. App.-Amarillo 1998, no writ); *Stephens v. Delhi Gas Pipeline Corp.,* 924 S.W.2d 765, 770 (Tex.App.-Texarkana 1996, writ denied); *Bergman v. Oshman's Sporting Goods, Inc.,* 594 S.W.2d 814, 816 (Tex.Civ. App.-Tyler 1980, no writ); *Borden, Inc. v. Wallace,* 570 S.W.2d 445, 448 (Tex.Civ. App.-El Paso 1978, writ dism'd w.o.j.), *disapproved on other grounds, Ayres v. Canales,* 790 S.W.2d 554, 556 n. 2 (Tex.1990).

▆▆▆▆ Proof that a statement was motivated by actual malice, existing at the time of publication defeats the privilege. *Randall's Food Mkts., Inc.,* 891 S.W.2d at 646. "In the defamation context, a statement is made with actual malice when it is made with knowledge of its falsity or with reckless disregard as to its truth." *Id.* "Reckless disregard is a high degree of awareness that the statement is probably false." *Carr,* 776 S.W.2d at 571. To invoke the privilege on a summary judgment, Cemex must conclusively establish that the allegedly defamatory statements were made with an absence of malice. *Id.*

The statements made to Tauszky and Montesano during their respective September 2002 meetings with Francisco Perez of Cemex were made in the course and scope of Cemex's investigation into the allegations that Henriquez, Roland Sped, and IFS were engaging in wrongful conduct. Because these parties were part of the group being investigated, they had an interest in the subject matter of these communications and a qualified privilege attached to these statements. *Randall's Food Mkts., Inc.,* 891 S.W.2d at 646. Henriquez agreed in his deposition testimony that all persons present at the meetings between Perez, Tauszky, and Montesano had a right to participate in the investigation of the allegations of wrongful conduct. Perez's statements to other Cemex Venezuela employees about Henriquez's termination were also protected by the privilege. *See Welch,* 978 S.W.2d at 224 (concluding that circulation of memo to pilots explaining why another pilot instructor had been fired was within the scope of the employer's qualified privilege). The summary judgment evidence indicated that those who may have been informed of the reasoning behind Henriquez's termination had an interest or duty in the subject matter of the information. Finally, the statement allegedly made by P.R. Talluri[11] to Maria Christina Gonzalez cannot give rise to a claim for defamation against Cemex because neither Talluri nor Gonzales were employed by Cemex at the time this conversation took place.

---

11. Talluri testified that he heard this rumor from persons who had been terminated from Cemex by Henriquez and that no one at Cemex told him the reasons why Henriquez had been terminated.

However, the qualified privilege did not apply if the statements at issue were made with actual malice. In the context of a summary judgment, if the defendant accused of defamation offers evidence that is "clear, positive and direct," even if such evidence is from an interested witness, establishing the lack of actual malice, the plaintiff must offer controverting proof to establish a fact issue as to malice. *Casso v. Brand*, 776 S.W.2d 551, 558 (Tex.1989); *Stephens*, 924 S.W.2d at 771.

Francisco Perez, who became regional procurement director for Cemex Venezuela in August 2001 and assumed many of the job responsibilities previously handled by Henriquez, testified in his affidavit that upon assuming his position as regional procurement director, he noticed that charges being submitted by IFS and Roland Sped to Cemex were higher than he thought they should have been. Perez also testified that around this time he was notified by a Cemex employee, Heiddy Corredor, of inappropriate business dealings between Cemex Venezuela, Roland Sped, and IFS. IFS and Roland Sped had provided all of Cemex's procurement functions from the United States while Henriquez had been procurement director for Cemex Venezuela. Consequently, Perez believed it was necessary to investigate the relationship between Henriquez and IFS and Roland Sped. During this investigation, Perez met with Tauszky and Montesano, and after these meetings, Perez believed further investigations were necessary. Perez then hired KPMG to conduct a full audit of the transactions between Cemex and IFS and Roland Sped. Based on Perez's investigation and the audit, Perez testified that, at the time Henriquez's employment was terminated, he believed that Henriquez had been involved in a scheme to overcharge Cemex.

In an effort to establish actual malice, Henriquez cites two of his own affidavits.[12] These affidavits, however, did not address the issue of actual malice because they did nothing to counter Cemex's evidence that Perez conducted an investigation based on his own personal review of the documentation and on allegations presented to him by another Cemex employee. Specifically, nothing in his affidavits addressed whether Cemex had a basis to conduct the investigation or whether anyone at Cemex made the allegedly defamatory statements with actual malice.[13] Cemex's summary judgment evidence established that Perez believed that the statements he made were factually correct and that he did not act with reckless disregard as to their truth or falsity in publishing those statements. Henriquez did not present any controverting summary judgment evidence. Accordingly, we hold that the trial court did not err in rendering summary judgment on Henriquez's defamation claim.[14]

12. Although Cemex objected to the affidavits on grounds that they contained hearsay and speculation, the record does not reveal that the trial court ruled on these objections.

13. Despite Henriquez's focus on the falsity of the statements in his affidavits, "malice cannot be inferred from the falsity of the statements alone." *Austin*, 118 S.W.3d at 497. Even if his summary judgment evidence raised a fact issue as to the truthfulness of the statements, such evidence does not raise a fact issue as to malice on the part of the Cemex employees who allegedly made the defamatory statements. *Id.* at 497–98. Henriquez has simply not presented any controverting evidence that the Cemex employees who allegedly published the statements believed the statements were false or published them with reckless disregard for the truth. *See Carr*, 776 S.W.2d at 571.

14. Henriquez also argues that because truth is an absolute defense to defamation, Cemex should have addressed the truth of the allegations in its motion for summary judgment.

## Business Disparagement

In his petition, Henriquez alleges that Cemex "made disparaging words about [Henriquez's] business behavior and economic interests which were factually false." Cemex contends that the trial court properly rendered summary judgment on Henriquez's business disparagement claim because the summary judgment evidence established that no disparaging words were published regarding Henriquez's economic interests, and Henriquez has admitted that he has not suffered any damage to his economic interests.

 Henriquez's single issue presented states "Did the District Court commit reversible error by granting summary judgment with inherent material fact issues present after a jury demand had been timely made." Henriquez cites *Malooly Bros., Inc. v. Napier*, 461 S.W.2d 119 (Tex. 1970), for the rule that "a point of error stating generally the trial court erred in granting summary judgment is sufficient to preserve error and to allow argument as to all possible grounds upon which summary judgment should have been denied." *Cruikshank*, 138 S.W.3d at 502 (internal citations omitted). Although Henriquez has presented a general *Malooly* point of error, such a point is sufficient to preserve a complaint only if the specific ground challenged on appeal is supported by argument. *See* TEX.R.APP. P. 38.1(h); *Spera v. Fleming, Hovenkamp & Grayson, P.C.*, 25 S.W.3d 863, 874 (Tex.App.-Houston [14th Dist.] 2000, no pet.). Henriquez did not present any argument or authorities on his cause of action for business disparagement in either his brief or his response to Cemex's summary judgment motion. Therefore, because Henriquez has not raised any

proper complaint regarding the trial court's rendition of summary judgment on his business disparagement claim, we hold that he has waived any error for our review. *Id.*

## Conclusion

We overrule Henriquez's sole issue and affirm the judgment of the trial court.

---

However, Rule 166a does not require a defendant to move for summary judgment on all of its affirmative defenses. TEX.R. CIV. P. 166a.