

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-08-234-CV

MICHAEL LEBLANC                                                                    APPELLANT

V.

DETECTIVE C.D. RILEY                                                               APPELLEE

------------

FROM THE 153RD DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### Introduction

Appellant Michael LeBlanc appeals the trial court's order granting appellee Detective C.D. Riley's first amended motion for summary judgment. In three issues, appellant contends that the trial court generally failed to follow Texas summary judgment principles, erred in its resolution of appellee's official

---

[1] *See* Tex. R. App. P. 47.4.

immunity defense, and incorrectly denied appellant's false imprisonment claim. We affirm.

In this summary judgment appeal, we will examine the facts in the light most favorable to appellant; we will therefore recite the facts favoring appellant's claims that are established through undisputed summary judgment evidence and also through the evidence particularly offered by appellant to determine whether appellee was entitled to summary judgment. *See* Tex. R. Civ. P. 166a(c), (i); *Morgan v. Anthony*, 27 S.W.3d 928, 929 (Tex. 2000); *Reynolds v. Murphy*, 188 S.W.3d 252, 262 (Tex. App.—Fort Worth 2006, pet. denied), *cert. denied*, 549 U.S. 1281 (2007).

**Background Facts**

**Summary Judgment Evidence**

At the time of the events relevant to this appeal, appellant worked in the auto repair and dealership industries; he managed Collision Masters in Haltom City. As part of his work, he bought and sold cars as an agent for Advantage Automobile Sales (Advantage), and he became the equitable owner of such cars, including a 2000 Toyota. According to appellant, he gave permission to James Hatcher to drive the Toyota while appellant employed him; however, when Hatcher's employment ended, Hatcher failed to return the car, and at that point, appellant noticed that his certificate of title to the car was

2

missing. Based on this discovery, appellant hired a towing company to repossess the car from Hatcher. After the towing company filed a letter of authorization and a repossession order with the Watauga Police Department,[2] it repossessed the car from a bowling alley. When Hatcher noticed that the car was missing, he reported it as stolen to the Watauga Police Department. According to appellee, Hatcher produced a Texas certificate of title[3] indicating that he owned the car; the certificate of title did not list any lienholders.

Officer Sean Romer investigated Hatcher's allegations and submitted a report. During his investigation, Officer Romer contacted an employee of the towing company, and the employee confirmed that appellant had hired him to repossess the car, but that appellant had not submitted any paperwork proving that he owned the car. Officer Romer concluded that the car had been unlawfully taken by appellant, and he classified the car as stolen in an electronic database.

After Officer Romer finished his initial investigation, the police department assigned appellant's case to Detective Riley, appellee. After appellee reviewed

---

[2] The letter of authorization is a document signed by appellant permitting the towing company to gain possession of the car. The repossession order is a similar unsigned document; it lists Advantage as the car's lienholder.

[3] In appellant's affidavit, he asserts that paperwork associated with the transfer of title to Hatcher related that Hatcher paid $2,000 for the car, and he contended that neither he nor Advantage ever received such payment.

Officer Romer's report, Hatcher contacted appellee, claiming that Hatcher owned the car because he had received it in lieu of a raise. He also told appellee that he had found the car locked inside the towing company's facility. Appellee told the towing company that it needed to give Hatcher the car.

Around that same time, appellant had a conversation with appellee wherein appellant claimed that Hatcher had stolen the car from him and that Hatcher had fraudulently transferred its legal ownership,[4] although appellant admitted that he had not yet filed a theft report about the car. Appellee told appellant that the car would be returned to Hatcher because Hatcher had a valid certificate of title showing that he was its owner and because appellant had a criminal record.[5] Appellant offered to sign a sworn statement supporting his allegations, and he informed appellee that Advantage was a licensed and

---

[4] Appellant submitted an affidavit as summary judgment evidence stating that Hatcher fraudulently transferred ownership of the car from Advantage to himself through forgery. Appellant specified that he was the only person with the authority to transfer ownership of the car, that he was the only person with the authority to file an application for a new title with the state, and that he never did either of these acts.

[5] During his deposition, appellee stated that he remembered telling appellant that he had seen appellant's criminal history, but he explained that he made this statement after appellant asserted that Hatcher deserved further investigation because he also had such a history.

bonded auto dealership.[6] Appellant said that he would sue appellee and have him fired if he gave Hatcher the car; appellee allegedly responded, "I'm going to get you," before he hung up the phone.

To ensure that the towing company gave Hatcher the car, appellee went to the towing facility and met with Hatcher. While appellee waited at the towing facility, appellant went to the Haltom City Police Department to report the car as stolen.[7] After appellee discussed the release of the car with an employee of the towing company (who, based on appellant's instructions and an alleged call to the Fort Worth Police Department, initially refused to give it to Hatcher), Hatcher regained the car. Appellant has never again seen the car.

Appellee contacted the Tarrant County District Attorney's Office to discuss the potential charges stemming from appellant's alleged theft of the car through the towing company he had hired. Appellee spoke with assistant

---

[6] Appellant later submitted such a sworn statement, and appellee reviewed this statement on the same day that he obtained appellant's arrest warrant. Appellee deposed that he did not investigate the allegations contained in that statement and that the statement did not make an impact on his decision to obtain the warrant because he believed he had probable cause based on other facts.

[7] Appellant attached a letter to his summary judgment response wherein he affirmed to the Haltom City Police Department on behalf of Advantage that it did not sell the car to Hatcher and that title to the car had therefore been fraudulently transferred. According to appellant, the Haltom City Police Department refused to act on his letter because of the charges the Watauga Police Department had brought against him.

5

district attorney Alfredo Valverde, who told him that since Hatcher provided evidence that he legally owned the car, the car could be considered stolen.[8] After speaking with Valverde, appellee prepared an arrest warrant with a supporting affidavit,[9] and then he presented these documents to a judge and gained the judge's signature on the warrant.

In November 2005, a police officer stopped appellant for speeding, arrested him based on the theft warrant, and took him to the Arlington Police Department. A grand jury declined to indict appellant for the theft charge.

---

[8] During a deposition, Valverde confirmed appellee's call and explained why he advised appellee that issuing an arrest warrant and prosecuting appellant was appropriate. Specifically, Valverde said that Hatcher seemed credible because (1) if Hatcher had stolen the car as appellant alleged, Hatcher likely would not have called the police, and (2) appellant waited until after repossessing the car to report it as stolen. During his deposition, appellee could not remember whether he discussed the sworn statement appellant had submitted with Valverde, because he did not know whether he received the statement before or after the conversation with Valverde occurred. Appellant's former attorney's affidavit, attached to appellant's summary judgment response, indicated that in August 2007, Valverde told him that he did not remember any specific details of his conversation with appellee. In appellee's own deposition, he conceded that he spoke with Valverde in lieu of researching law related to car repossession in Texas, that he knew "very little" about title transfers of cars, and that he had no special training regarding car thefts.

[9] The affidavit substantially incorporated the same facts contained in the offense reports generated by Officer Romer and appellee.

**Procedural History**

In November 2007, appellant filed his second amended petition[10] against appellee, asking for compensatory and exemplary damages related to his arrest, the loss of the car, and his mental anguish. Appellee filed an answer that asserted a general denial as well as the affirmative defense of official immunity.

The next month, appellee filed a hybrid (traditional and no-evidence) motion for summary judgment.[11] In February 2008, appellant filed his response to appellee's motion, attaching his own affidavit, deposition testimony from Valverde and appellee, and other affidavits and documents. In his affidavit, appellant asserted (among other contentions) that appellee did not give him sufficient time to produce evidence that he owned the car. The parties filed objections to each other's summary judgment evidence; however, the trial court never expressly ruled on these objections, and no issue based on the admissibility of the evidence as asserted in the trial court has been raised in this appeal. In March 2008, the trial court granted appellee's motion (without

---

[10] Appellant filed his original petition in March 2007, and he filed his first amended petition in October 2007; neither of these petitions are in the record on appeal.

[11] Appellee originally filed his motion for summary judgment in October 2007, and appellant filed a response to this motion in November 2007. However, after appellant amended his petition, appellee submitted an amended summary judgment motion, and appellant filed a new response.

7

specifying the particular ground it used to do so)[12] and rendered judgment for appellee on all of appellant's claims. After filing a motion for new trial, appellant perfected this appeal.

## Appellant's General Challenge to the Trial Court's Summary Judgment Must Be Overruled

In his first issue, appellant states, "The Trial Court erred by not following the Texas case law summary judgment rules by denying Appellant's Motion for Summary Judgment,[13] and further erred by granting Appellee's First Amended Motion for Summary Judgment." He then sets out standards relating to summary judgments, but he fails to explain how the trial court misapplied these standards. Instead, he merely concludes that the trial court "failed to consider the proof and evidence presented by Appellant and failed to consider the many questions of fact presented in Appellant's response to Appellee's s/j [sic] motion."

A general issue broadly challenging a summary judgment is permissible. *See Malooly Bros., Inc. v. Napier*, 461 S.W.2d 119, 121 (Tex. 1970) (stating

---

[12] Under such a general grant of summary judgment, we must affirm the trial court's decision if any of the theories that appellee advanced at trial are meritorious. *See Morris v. JTM Materials, Inc.*, 78 S.W.3d 28, 36 (Tex. App.—Fort Worth 2002, no pet.).

[13] The record does not indicate that appellant ever filed a motion for summary judgment.

that such a general issue "*allow[s] argument* as to all the possible grounds upon which summary judgment should have been denied") (emphasis added). However, to preserve error on a particular cause of action on which the trial court granted summary judgment, an appellant must still present argument and legal authority related to that particular claim. *See Henriquez v. Cemex Mgmt., Inc.*, 177 S.W.3d 241, 255 (Tex. App.—Houston [1st Dist.] 2005, pet. denied); *Cruikshank v. Consumer Direct Mortg., Inc.*, 138 S.W.3d 497, 502 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) (concluding that "a general *Malooly* point of error . . . is only sufficient to preserve a complaint if the specific ground challenged on appeal is supported by argument"); *Pena v. State Farm Lloyds*, 980 S.W.2d 949, 959 (Tex. App.—Corpus Christi 1998, no pet.) (holding that *Malooly* does not relieve "an appellant of the burden to challenge the grounds for the summary judgment and present at least some argument for his case on appeal"); *Jatoi v. Decker, Jones, McMackin, Hall & Bates*, 955 S.W.2d 430, 433–34 (Tex. App.—Fort Worth 1997, pet. denied) (deciding that a general *Malooly* point was insufficient because the appellant's argument did not highlight "any specific basis on which summary judgment was improper").

Because appellant fails to provide an adequate explanation of the general contentions he has raised in his first issue by connecting them to his specific

claims, we will overrule that issue.[14]  *See* Tex. R. App. P. 38.1(i) (requiring a "clear and concise argument for the contentions made, with appropriate citations to authorities and to the record"); *Leachman v. Dretke*, 261 S.W.3d 297, 305 n.2 (Tex. App.—Fort Worth 2008, no pet.) (noting that an issue may be waived due to inadequate briefing); *McClure v. Denham*, 162 S.W.3d 346, 349 (Tex. App.—Fort Worth 2005, no pet.); *Jatoi*, 955 S.W.2d at 433–34.

Also, appellee specifically included no-evidence challenges related to appellant's conversion, malicious prosecution, and abuse of process claims in his summary judgment motion, and the trial court granted summary judgment on each of these claims.  Because appellant, though raising a general *Malooly* issue, has presented no argument related to any of these causes of action on appeal, we will affirm the trial court's grant of summary judgment on such claims, and we will proceed to determine whether the trial court correctly granted summary judgment to appellee on appellant's sole remaining claim—false imprisonment—which he properly raised in his third issue.[15]

---

[14] Even if the trial court had relied on improper summary judgment standards or had misapplied the correct standards, we note that our review of the trial court's decision proceeds on a de novo basis.  *See Gray v. Nash*, 259 S.W.3d 286, 289 (Tex. App.—Fort Worth 2008, pet. denied).

[15] In his third issue, appellant also contends that appellee violated his federal and state constitutional rights.  However, appellant did not raise any constitutional claims in his second amended petition or during the trial court's summary judgment proceedings; thus, we will not consider these claims on

*See Henriqu*ez, 177 S.W.3d at 255; *see also City of The Colony v. N. Tex. Mun. Water Dist.*, 272 S.W.3d 699, 739 (Tex. App.—Fort Worth 2008, pet. filed) (affirming the trial court's summary judgment on a promissory estoppel claim because the appellant set forth "zero argument or evidence in its brief challenging the trial court's grant").

### Summary Judgment Standards

After an adequate time for discovery, the party without the burden of proof may, without presenting evidence, move for summary judgment on the ground that there is no evidence to support an essential element of the nonmovant's claim or defense. Tex. R. Civ. P. 166a(i). The motion must specifically state the elements for which there is no evidence. *Id.*; *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 207 (Tex. 2002). The trial court must grant the motion unless the nonmovant produces summary judgment evidence that raises a genuine issue of material fact. *See* Tex. R. Civ. P. 166a(i); *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002).

When reviewing a no-evidence summary judgment, we examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion. *Sudan v. Sudan*, 199

appeal. *See Foster v. Howeth*, 112 S.W.3d 773, 775 (Tex. App.—Beaumont 2003, no pet.).

S.W.3d 291, 292 (Tex. 2006). If the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact, then a no-evidence summary judgment is not proper. *Moore v. K Mart Corp.*, 981 S.W.2d 266, 269 (Tex. App.—San Antonio 1998, pet. denied). We review a no-evidence summary judgment for evidence that would enable reasonable and fair-minded jurors to differ in their conclusions. *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005)).

### False Imprisonment

In his first amended motion for summary judgment, appellee asserted that there was no evidence of certain elements of the false imprisonment claim that appellant asserted in his second amended petition. Specifically, appellee contended that there was no evidence that he detained appellant, that he made a misrepresentation of fact or law leading to appellant's detention, or that appellant's detention was without legal authority or justification. He particularly argued that because appellant's arrest was made under a procedurally correct arrest warrant, his false imprisonment claim was barred.

To establish false imprisonment, appellant must show that there has been a (1) willful detention, (2) without consent, and (3) without authority of law. *Dangerfield v. Ormsby*, 264 S.W.3d 904, 909 (Tex. App.—Fort Worth 2008,

12

no pet.); *see Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 506 (Tex. 2002). When an arrest is made under a procedurally valid arrest warrant on the correct person named in the warrant, there can generally be no claim for false imprisonment. *Martinez v. English*, 267 S.W.3d 521, 529 (Tex. App.—Austin 2008, pet. denied) (reversing a jury's award on a false imprisonment claim because the plaintiff had challenged "the grounds on which the warrant was issued, not the warrant's facial validity"); *Avalos v. Mejia*, 788 S.W.2d 645, 646 (Tex. App.—Corpus Christi 1990, no writ); *see James v. Brown*, 637 S.W.2d 914, 918 (Tex. 1982) (explaining that if "an arrest or detention is executed under process which is legally sufficient in form and duly issued by a court of competent jurisdiction, an action for false imprisonment will not lie"). To determine whether an arrest warrant is valid for false imprisonment purposes, a court must look "only to the form of the process by which the arrest warrant was made; [the court must] not determine, for example, whether probable cause existed to issue the warrant. If the warrant is valid on its face, [the court's] inquiry ends there." *Martinez*, 267 S.W.3d at 529 (citation omitted); *see also Wal-Mart Stores, Inc. v. Odem*, 929 S.W.2d 513, 519 (Tex. App.—San Antonio 1996, writ denied) (stating that in a false imprisonment case, the legal authority element is met "*either* by the procurement of an arrest warrant *or* by the showing of existence of probable cause") (emphasis added).

13

In *Emerson v. Borland*, Borland sued several officials within the state fire marshal's office for false imprisonment based on his arrest that indirectly arose from their determination that he was illegally selling portable fire extinguishers. 927 S.W.2d 709, 711–13 (Tex. App.—Austin 1996, writ denied), *cert. denied*, 522 U.S. 866 (1997). Borland's false imprisonment claim was based on his assertion that his actions were legal and that his arrest (pursuant to warrants issued by local officials who relied on the defendants' determination) was without probable cause. *Id*. at 715–16. On appeal, the Austin Court of Appeals rejected Borland's contention, holding that because the warrants were issued by competent magistrates and because they were in proper form, Borland's false imprisonment claim was precluded as a matter of law. *Id.* at 720–21.

Similarly, in *Cantu v. Botello*, Cantu sued a McAllen police officer for false imprisonment after the officer sought and obtained an arrest warrant following his investigation that incorrectly concluded that Cantu unlawfully delivered marijuana to a UPS office. 910 S.W.2d 65, 65–66 (Tex. App.—Corpus Christi 1995, no writ). The Corpus Christi Court of Appeals rejected Cantu's false imprisonment claim, concluding that a "valid warrant is an absolute bar to a claim of false arrest." *Id*. at 66.

14

As in *Borland* and *Cantu*, appellant in this case does not challenge the process of his arrest through the technical aspects of the warrant or its facial validity; instead, he complains about appellee's underlying factual investigation and the probable cause determination leading to the issuance of the warrant. After examining appellant's arrest warrant, we conclude that it complies with the procedural requirements set forth by the code of criminal procedure. *See* Tex. Code Crim. Proc. Ann. art. 15.02 (Vernon 2005). Under these circumstances, we hold that appellant's false imprisonment claim is barred.[16] *See Borland*, 927 S.W.2d at 720–21; *Cantu*, 910 S.W.2d at 66. Therefore, we will also affirm the trial court's grant of summary judgment on this claim.[17]

---

[16] We do not conclude that appellant's arrest pursuant to a procedurally valid warrant would bar all claims he may have asserted against appellee related to appellee's allegedly deficient investigation; we only conclude that such an arrest bars the sole claim that appellant preserved in this appeal—false imprisonment.

[17] Because we have affirmed the trial court's grant of summary judgment on appellant's sole remaining claim on this basis, we need not address appellant's second issue—whether the trial court correctly granted appellee's traditional motion for summary judgment on his official immunity defense. *See* Tex. R. App. P. 47.1.

15

**Conclusion**

Having overruled appellant's dispositive issues, we affirm the trial court's judgment.

TERRIE LIVINGSTON
JUSTICE

PANEL:  LIVINGSTON and MCCOY, JJ.; and WILLIAM BRIGHAM (Senior Justice, Retired, Sitting by Assignment).

DELIVERED:  April 2, 2009